OF THE

# STATE OF ARKANSAS,

AT THE

## MAY TERM, 1882.

[CONTINUED FROM VOLUME XXXVIII.]

FONES ET AL. V. PHILLIPS, BY GUARDIAN.

| 39 | 17 |
| 56 | 237 |
| 39 | 17 |
| 58 | 71 |
| 58 | 213 |
| 39 | 17 |
| 68 | 320 |
| 39 | 17 |
| 73 | 55 |
| 77 | 6 |
| 39 | 17 |
| f79 | 24 |
| 82 | 530 |

1. MASTER AND SERVANT: *Liability of master for negligence of servant.*
   A master is not liable for an injury to a servant occurring from the negligence of a fellow-workman, unless the latter was known to be careless, or incompetent, so as to impute negligence to the master in employing him.

2. SAME: *When negligence of servant is negligence of the master.*
   When the performance of duties peculiar to the master, and properly appertaining to him *as such*, is intrusted to one who is, in other respects, a mere workman, upon the footing of others, such workman *quo-ad hoc*, and to the extent of the master's duty intrusted to him, stands in the master's place, and his negligence binds the master.

3. SAME: *Liability of master for negligence of middle-man.*
   Whenever the master delegates to another the performance of a duty to his servants which the master has impliedly contracted to perform in person, or which rests upon him as an absolute duty, he is liable for the

2

Fones et al. v. Phillips, by Guardian.

manner in which that duty is performed by the middle-man whom he has selected as his agent, and to the extent of the discharge of these duties by the middle-man, he stands in the place of the master; but as to all other matters he is a mere co-servant, and the question is not whether the master reserved oversight and discretion to himself, but whether he did in fact clothe the middle-man with power to perform the duties to the servant injured.

4. SAME: *Master's duty to explain dangers of machinery.*

It is the duty of a master in assigning a servant to duty at or about dangerous machinery, to give to the servant detailed and special warnings as to all *latent* dangers not discoverable by a reasonable and ordinary exercise of diligence by the servant; but the master is not required to explain patent dangers at all, which are ordinarily incident to the service, and which it may be reasonably expected, under the circumstances, the particular servant can see and appreciate.

5. PRACTICE: *Exceptions to instructions, how made.*

It is the duty of counsel to the court to specify their objections to instructions, but it is sufficient *for the record* to show a general objection to a particular instruction, which must prevail if any material part of it be bad, unless it be divisible into wholly disconnected parts.

APPEAL from *Pulaski* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

*Dodge & Johnson,* for appellants:

1. As to what constitutes a superintendent as contradistinguished from a fellow-workman. *Pierce on Railroads, 368; M. & M. R. Co. v. Smith, 59 Ala., 245; C. & P. R. Co. v. Moran, 44 Md., 283; K. P. R. Co. v. Salmon, 11 Kan., 83; R. Co. v. Decker, 82 Penn. St., 119; 84 ib., 419; 64 N. Y., 5; 11 Hun., 591-2; 59 N. Y., 359; 55 N. Y., 608; 49 N. Y., 521.*

2. Expenses of *medical attendance* not recoverable. *Menges v. M. C. Town. Pa., 12 Reporter, 345; R. R. v. Donahue, 20 P. F. Smith, 124; R. R. v. Kelly, 7 Casey, 372; R. R. v.*

*Zab.*, *9 ib.*, *318*; *7 P. F. S.*, *339*; *3 ib.*, *276*; *7 ib.*, *338*; *4 Wright*, *101*; *23 Pa. St.*, *318*; *21 Wis.*, *372*; *Field on Dam.*, *sec. 640*; *48 Pa. St.*, *320*; *R. R. v. Barker*, *33 Ark.*, *360*; *R. R. v. Freeman*, *36 Ark.*, *41*; *Sh. & Red. on Neg.*, *sec. 608*; *4 Denio*, *461*; *31 Penn. St.*, *372*; *1 E. D. Smith*, *453*; *Sedg. on Meas. of Dam.*, *p. 712*; *Collins v. Lefevre*, *1 Fost. & Fin.*, *436*; *Moody v. Osgood*, *50 Barb.*, *628*; *Hurt v. Hoyt*, *20 Ill.*, *318*; *Woods' Law of Master and Servant*, *p. 443*; *2 Thomp. on Neg.*, *1259–1260 (sec. 3)*; *38 Wis.*, *584*; *44 Cal.*, *46*.

3. *Fellow-workman.* The third instruction for defendant should have been given. For negligence of fellow-servants, a servant can have no action against the master, if the master use due diligence, having respect to the nature of the service, to provide proper materials, appliances, etc., and due care in the selection of competent and careful fellow-servants, etc. (*R. R. Co. v. Duffy*, *35 Ark.*, *613*; *32 Md.*, *411*; *46 ib.*, *354*; *Hutchison v. R. Co.*, *5 Exch.*, *343*; *ib.*, *354*; *Hough v. R. Co.*, *100 U. S.*, *213–217*; *Wharton on Neg.*, *secs. 209, 217*; *Cooley on Torts*, *secs. 543–545*.) There is no obligation on the master to give his personal supervision of the work, but he may delegate that power to a superintendent or foreman, and the weight of authority is, that such superintendent or foreman is a fellow-workman within the rule, *supra.* (*Cooley on Torts*, *544*; *Wiggitt v. Fox*, *11 Exch.*, *832*; *Brown v. Cotton*, *3 H. & C.*, *513*; *Searle v. Lindsey*, *11 C. B. N. T.*, *429*; *16 ib.*, *669*; *19 ib.*, *361*; *Feltham v. England*, *L. R. Q. B.*, *33*; *Howell v. Steel Co.*, *L. R.*, *10 ib.*, *62*; *39 N. Y.*, *468*; *64. N. Y.*, *5*; *62 Me.*, *463*; *70 ib.*, *60*; *Lawrence v. Batchelor*, *12 Reporter*, *783*.) For exception to this general rule, see *Whart. on Neg.*, *sec. 229*; *Moran's Case*, *44 Md.*, *283*.

*Contributory negligence of minor.* The fifth instruction for plaintiff should have been given. Contributory negligence is a complete defense to an action for damages for a merely

negligent injury. (*R. Co. v. Sinclair*, 7 *Reporter*, 559; *Sh. & R. on Neg.*, secs. 25, 29 and 83; *S. S. Rev.*, Vol. *V, N. S., p. 831.*) Being a minor does not affect the rule. (*King v. R. Co.*, 9 *Cush.*, 112; *Chicago v. R. Co.*, 28 *Ind.*, 28; 67 *Ill.*, 498; 1 *Cald.*, 611; 6 *Hill*, 592; *Murphy v. Smith*, 19 *C. B., N. S., 361.*) Where there is conflict as to boy's capacity to apprehend the hazard, etc., it is proper to submit the question to the jury. (*Field on Dam.*, secs. 192–3.) See, also, *R. Co. v. Gladden*, 15 *Wall.*, 408; *R. Co. v. Barker*, 33 *Ark.*, 350; 7 *Am. Rep.*, 7; *S. & R. on Neg.*, 49, *Note* 2; 58 *Me.*, 384; *Whart. on Neg.*, sec. 311, note 1; 8 *Gray*, 123; 9 *Allen*, 401; 4 *ib.*, 283; 29 *Barb.*, 234; 43 *How. Pr.*, 333; 26 *Ill.*, 259; 42 *ib.*, 174; 27 *Ind.*, 513; 28 *ib.*, 287; 40 *ib.*, 545; *Nagle v. R. Co.*, 8 *Reporter*, 404; 88 *Penn. St.*, 35; 12 *Rep. Ala.*, 69; 18 *N. Y.*, 248.

If Phillips had full knowledge of the danger, he must abide the consequences; he is considered in law to have assumed the risk. Defendants can not be held for not having adopted precautionary measures for his protection against his own carelessness and negligence. *R. Co. v. Striker*, 51 *Md.*, 47; *Whart. on Neg.*, secs. 214–217; *Woodly v. R. Co., L. R. Ex. Div.*, 389; *Barker v. R. Co.*, 20 *Am. L. Reg.*, 732; *R. Co. v. Bresmer*, 11 *Rep.*, 754; 29 *Conn.*, 549; *R. Co. v. Barber*, 5 *Ohio St.*, 541.

*R. C. Newton* and *W. G. Whipple*, for appellee:

This court does not weigh evidence where there is a conflict, but leaves that to the jury. 36 *Ark.*, 261; 23 *ib.*, 159; *ib.*, 209; 19 *ib.*, 119; *Cent. L. J.*, Vol. *X*, 477; 58 *Mo.*, 546.

Damages not excessive. (*Schmidt v. R. Co.*, 23 *Wis.*, 186; *Houston R. Co. v. Randall*, 50 *Tex.*, —.) No special proof of damages necessary. (*Sedgwick on Dam.*, 699, 700, n.; *City of Ripon v. Bettel*, 30 *Wis.*, 618; *Rowley v. R. Co., L.*

*R., 8 Ex., 221; 47 N. Y., 321.)* The injury is personal, and does not pertain to his pursuit. (*48 N. H., 545; Sedgwick, L. C., on Dam., p. 703; Fort v. Union Pac. R. Co., 2 Dillon, 268; 32 Iowa, 324–330; South. Law Rev., Vol. V, No. 4, 543.*) In support of instructions given by the court below: *2 Dillon, 259; 17 Wallace, 553; 2 Dillon, 294; 17 Wallace, 657; 102 Mass., 572–596; 29 Conn., 548; Cooley on Torts, 553, 560–1–2–3; Wharton on Neg., secs. 216, 228, 229; 37 Mich., 205; Hough v. Tex. R. Co, 100 U. S., 10 Otto, 213; 120 Mass., 427; Berea Stone Co. v. Kraft, Ohio Sup. Ct., January 22, 1878, Reporter, Vol. V, p. 625; Q. Mg. Co. v. Ketts, Sup. Ct. Mich., October 28, 1879, Cooley, J., Reporter, Vol. IX, p. 86; South. L. Rev., Vol. V, No. 3, pp. 380–399 ib, No. 5, pp. 711–12–13; Smith v. Oxford Iron Co., Sup. Ct. N. J., 13 Vroom, Reporter, Vol. XI, p. 711; Green. St. R. Co. v. Bresmer, Sup. Ct. Pa., May 2, 1881, Reporter, Vol. XI, p. 754; Cowles v. R. Co., Sup. Ct. N. C., August 17, 1881; South. L. Rev., Vol. VII, No. 4, p. 604; Cent. L. J., Vol. XIV, p. 92; Hot Springs R. Co. v. Newman, 36 Ark., 611; 35 Ark., 497.*

That the master is responsible for the negligence of the *foreman*, see, especially, *Cooley on Torts, pp. 560–1–2–3; Reporter, Vol. IX, p. 37; Whart. on. Neg., sec. 229; 100 U. S., 219; Reporter, Vol. V, p. 625; 37 Mich., 205,* etc.

The law imposes on the master the duty of greater caution in the management and direction of young and inexperienced employés. (*Cooley on Torts, p. 553; Whart. on Neg., sec. 216; 11 Reporter, 754; South. L. Rev., Vol. V, No. 5, p. 711, et seq.; Dowling Case, Cent. L. J., Vol. XIV, p. 92, Sup. Ct. Mo., November 2, 1881.*

The question of negligence is for the jury. *Whart. on Neg., sec. 217; Hurlsenkamp v. R. Co., 34 Mo., 54; Filer v. R. Co., 49 N. Y., 54.*

The exception to the third instruction asked by plaintiff

was not sufficiently specific to be available in this court. *Camden v. Doremus*, *3 How.*, *530*; *18 Wis.*, *523*; *Carr v. Crain*, *7 Ark.*, *250*; *101 U. S.*, *149*; *3 Otto*, *54*; *1 Wall.*, *654*; *2 ib.*, *338–9*; *1 Black.*, *220*; *5 Denio*, *219*; *4 E. D. Smith*, *253*; *21 How. Pr.*, *360*; *9 N. Y.*, *5*, *Seeden*, *174*; *5 Duer*, *257*; *21 Iowa*, *430*; *23 Iowa*, *452*; *ib.*, *297*; *6 ib.*, *193–9*; *9 Ind.*, *530*; *22 Ind.*, *258–9*; *Chrisman v. McDonald*, *28 Ark.*, *8*; *Murphy v. Lemay*, *2 Ark.*, *224*; *7 Wall.*, *139*; *21 How. Pr.*, *360*; *39 Vt.*, *606*; *43 N. H.*, *588*; *Oliver v. Phelps*, *1 Zab.*, *609*.

EAKIN, J.  The appellants are partners in a cotton-gin manufactory at Little Rock.  Phillips, a minor, through his father, as next friend, sued them for damages, upon the ground of their negligence and want of due caution in putting him at work upon and about a dangerous machine, whilst in their employment, whereby his left hand was so torn and lacerated that amputation became necessary.  He recovered, before a jury, a verdict for $1,500, and the company appeals.

The material evidence is to the effect that defendants were running a gin factory, in which were used various kinds of machinery.  Hall, one of the defendants, was a partner, and the active manager.  Upon the repeated applications of the plaintiff, a bright and intelligent youth, then nearly fourteen years of age, with a natural turn for mechanics, and upon the urgent solicitation of the father, he was taken into the factory by Hall, that he might learn the trade, and assist in the support of his father's family. When he came to work, Hall was sick at home.  The work at the factory was going on, however, under the directions of Wheeler, one of the employés and workmen, through whom Hall, whilst sick, transmitted his directions, and who reported to Hall three times a day.  On the first

day young Phillips was turned over, by Wheeler, to assist a workman named McLean, in working a drill for boring iron. Proving intelligent and effective, and McLean no longer requiring his aid, he was put the next day to feeding and attending a small surface-planer. The work seemed simple and light, and with the aid of Wheeler to adjust the machine when necessary, young Phillips learned it at once. His father was advised that day of the kind of work which had been assigned him, and made no objection. The machine consisted of a horizontal cylinder of knives, under which, and between them and the surface of a table, the timbers were passed, coming out behind. Nothing was required of the feeder but to start the stick, and it was drawn through by the machinery. The cylinder was covered from the front by a metallic hood, entirely protecting the knives, so that they were not even visible. The hood extended over the cylinder past the rear of the knife-blades, leaving an open space of about five inches between the edge of the hood and the table, in the rear, through which the knives could be seen. The machine was run by a band from a shaft, and the cylinder revolved with great rapidity. In addition to the hood, which was part of the machine, the defendants, to guard against possible accident, had covered the cogs at the side with a galvanized plate, to prevent any one from being caught.

Wheeler explained the machine to young Dill; showed him how to feed and tend it; cautioned him not to use his hands about the knives in removing chips, but to use a stick, and not to oil the machine while running. He was told, however, that he need not stop the machine whilst removing the planed pieces out of the way, as the machine would thereby lose momentum.

Upon the fourth day after entering the shop, and on the third of his working the machine, he was behind it,

engaged in piling away pieces which had been run through. Piles had already been made at the sides, under directions from Wheeler.   The pile was five feet from the knife-blades, which were still running, and, as we infer from the evidence, about three feet from the rear edge of the table. There was room enough to have worked in the space, at piling the pieces, with the exercise of care, but the youth was not mindful of the revolving knives.   He was working with his back to them, and unconsciously threw his left hand, or let it swing, backwards.   It was caught by the knives and mutilated.

The grounds of the action are that the company through its superintendent, whether it was Wheeler or Hall, was guilty of negligence in putting the plaintiff to work in and about the machinery, and without giving him such cautionary directions as humanity and duty required to guard him in his youth and inexperience.

It is evident that no negligence can be imputed to the company from the mere employment of the youth, by Hall, to work in a factory in which machinery was used.   It was done at the urgent request, not only of the boy, but of his father, who was certainly aware of all the perils naturally appertaining to the work.   It was laudable on all sides. Hall does not seem to have been actuated by any selfish desire to avail himself of the boy's services, regardless of the risk.   He rather seems to have been prompted by a desire to gratify the parents as well as the boy; and to afford him the opportunity of learning a lucrative trade.   Almost all industries are now conducted by machinery, and all machinery is more or less dangerous.   It would be a sad detriment to minors in preparing for future usefulness, if they should be precluded from all occupations requiring them to work with or near machinery.   Parents who desire the future success and usefulness of their sons, may well desire

them to have such employments upon the ordinary risks, and of those risks the paternal instincts may be trusted generally, for a fair estimate. Except in cases of abnormal cruelty, or indifference, they are perhaps the surest guide.

Nor is it seriously contended, upon the evidence of the boy's intelligence and aptitude for business, that there was any negligence in putting him to work at running the machine and feeding it. The construction of the machine is such that it seems peculiarly safe, for those in front who feed it by running the pieces through, and the proprietors had taken further care to guard against danger from being caught in the cogs. He was not required or allowed to adjust the machine. This was done by Wheeler when necessary, who fully explained the machine, forbade him to oil it while in motion, and gave him special caution against using his hands near the knives for the purpose of removing chips. This, perhaps, was because the removal of chips occurred to him as a thing often necessary, and the danger from that source most likely; but a boy of the plaintiff's proven carefulness and intelligence, could not have failed to take it as a general warning of the danger of letting his hand come near the knives in motion. Besides his father impliedly assented to this very employment upon hearing of it, and failed to object. In truth the accident did not happen from his work with the machine itself. It happened whilst he was piling pieces in the rear, and may as easily have happened to any other workman or apprentice in the shop, who had nothing to do with the machine, and had been put to piling pieces so near to its knives while in motion.

The real questions for the jury, under correct instructions, to determine, were:

1. Was there on the part of Wheeler a negligent want of consideration for the boy's safety in putting him to pile

the pieces in that position while the machine was in motion?

2.  Did Wheeler, either directly or by delegation from Hall, so represent the company that his negligence would bind it, and not be considered the negligence of a fellow-workman?

Want of capacity and a natural thoughtfulness, depending in each case on the individual, more than upon the number of years in his age, should be considered in determining these questions.

Both were questions for the jury, and this brings us to consider the instructions.

It will simplify their analysis to determine, as clearly as may be possible, the distinction between a fellow-servant and one acting in the place of the master 'and with his authority.

1. MASTER AND SERVANT: Liability of master for negligence of servant.

Who is a fellow-servant.

The directions as to the specific employment, in which negligence existed, if any, were given by Wheeler. It is nowhere shown that he was known to be incompetent or careless, so as to impute negligence to the company in employing him. If he is to be considered a fellow-servant with plaintiff, that ends the case, although he may have contributed to the accident by his negligence. In this all the authorities are agreed, and it has ceased to be an open question. But it is not yet quite clear from the authorities, *who* is to be considered a fellow servant in this regard, or who a representative of the master, in such manner as to bind him for negligence. It is not very easy to lay down a well-defined rule as to this. The formulations attempted, have not been clear cut. Indeed the English and American cases are not easily reconcilable. The former go to the extent of holding all to be fellow-servants, within the rule, who are engaged in the prosecution of the same business, under the same master, and receiving wages from

the same source, however different the grades of their services may be, and however the labor of some may be under the direction and control of others, unless the master has transferred all his authority to the servant guilty of the negligence. The American cases present less uniformity, and in some of them it has been held that a superior employé, intrusted with the control of inferiors, although himself an employé, may so represent the master and stand in his place, as to make him answerable for negligence to persons injured thereby, although the master may retain a general authority over all. In the language of *Mr. Wharton*, who cites the cases in the notes to *section 235* of his work *on Negligence*, "the liability of the master for the middle-man's negligence, has been pushed so far as to make the master liable to a servant for all injuries inflicted by fellow-servants who were in a position superior to, or beyond the influence of the injured party."

Upon the examination of a number of these cases, we think with Mr. Wharton, that the line of distinction between the cases where the employer is liable to an employé for injury resulting from negligence of a fellow-workman, and those where he is not, can be traced along this principle. That is that the general rule is recognized here as in England, but that " where a master is required to perform specific duties to his servants, he is liable for negligence in the discharge of such duties, no matter who may be the agents through whom he acts." The meaning of which I take to be, that in all enterprises, or works requiring the co-operation of many hands in different departments, much of the details must of necessity be left to the management of subordinates or middle-men, who are empowered to direct the labors and movements of others in the execution of those details. The necessities of productive industries upon the extended scale required

by our advanced civilization, make this unavoidable. It is known that the master can not be ubiquitous, inspecting and directing every operation. It is human to err, and those who accept service must be supposed to contemplate that negligencies may occur on the part of their fellow employés, which the employer could not foresee nor prevent. They are presumed to take the risks of that. Such risks ordinarily affect the amount of wages, and the rule of law in question, exempting the master, is justly applied to these cases. And it may be said, in passing, that in this regard, the advantage of learning a trade may stand in the place of wages. Even persons who work gratuitously, if any such should be, ought not to put themselves on special grounds, and avoid the operation of the rule. Their aid might otherwise prove a curse.

2. SAME: When negligence of servant is negligence of master.

Yet in all industrial operations there are duties peculiar to the master, such as properly appertain to him *as such*, and which all employés of every grade have the right to expect he will discharge. He may not be able to perform them in person, yet they are of such a nature that he must see to it, at his proper peril, that they are faithfully discharged by some one for him. And if their discharge be intrusted to one who in other respects is a mere workman on the footing of others, that workman, *quo-ad hoc*, and to the extent of the *master's duty* intrusted to him, stands in the master's place, and his negligence binds the master. For instance, it is the duty of the master to employ competent and careful foremen and superintendents, or at least to avoid knowingly, or carelessly, imposing upon the other workmen an unskilled or dangerous fellow workman. If he should delegate that duty to one already a workman in some regular department, it may be easily conceived and recognized as just, that the master should be bound by his negligence in the employment of others, and not bound

(to, a fellow-workman) for negligence in the administration and direction of his particular department. And so, also, it seems to be recognized as the duty of railroad companies to establish and put in operation such time tables, schedules of trains, and general rules for running as may be fairly necessary for the safety of all their employés, and to notify those intrusted with their execution. This is master work, and although the company may commit it to an employé, yet it has been held, that it is liable for the negligence of its servant therein, to one of its employés injured thereby. This seems to be the principle upon which was decided the case of *Little Miami R. R. Co. v. John Stephens, 20 Ohio, 415.* At least Chief Justice HITCHCOCK placed his assent upon this ground. But if the company had done its duty in this regard, and the plaintiff, an engineer, had been injured by the negligence of the conductor in failing to observe the regulations, there can be no doubt under the great mass of authority, in both countries, that the company would have been exempt.

The case of *Fort v. Union Pacific R. R. Co.*, reported in *2 Dillon C. C. R., page 259,* and an appeal in *17 Wallace, 553,* is cited by appellee here in support of the position that the gin company is liable for the negligence of Wheeler, if any, in putting the boy at work in a dangerous position. That case was decided below upon its peculiar circumstances, but may be sustained upon grounds in accordance with the distinction taken above. A boy of tender age was employed under a foreman in the shop of the railroad company, in receiving and putting away mouldings. In obedience to the orders of the foreman he ascended to a shaft running the machinery, to assist in the repair of a belt, and was badly injured, to the extent of the loss of his arm. In a suit by the father it was contended that the injury resulted from the negligence of the

foreman, a fellow-workman, and that the company was not liable. The jury returned a verdict for plaintiff, finding specially that the foreman in repairing the machinery was acting. within the scope of his duty and employment, but that the matter was *not* within that of the son. Further, that the order to the boy was not a reasonable. one, and such as a prudent man should have given. After verdict for the plaintiff, a motion for a new trial was denied. The Circuit Judge, Dillon, expressly based his decision upon the peculiarity of the case, confessing a doubt whether it could be discriminated from "those in which it is held that the common employer of two servants is not liable to one for the act or negligence of the other in the course of the common employment," stating, at the same time, that he was aware of the extent to which that general rule had been carried by the courts, particularly in England. He rested, however, upon the ground that the foreman, *in superintending the repair of the belt*, was in the discharge of a duty intrusted to him by the corporation, and he alone, at that time, represented the corporation, which in contemplation of law was *there present in his person*.

Now if it be the duty of a corporation, *as master*, to provide and keep in repair all proper machinery, the distinction taken is just that above indicated, and harmonizes with the general rule as a just and reasonable exception. Its recognition and application by so eminent a jurist, can not but be persuasive in the highest degree. The Supreme Court upon appeal, Mr. Justice BRADLEY dissenting, affirmed the judgment. Mr. Justice DAVIS, delivering the opinion of the court, remarked that the company having intrusted to the particular foreman the care and management of the machinery, and in so doing made it his rightful duty to adjust it, when displaced, and having placed the boy under him with directions to obey him, they must pay the pen-

alty of the tortious act he committed, in the course of the employment. It was also held, both below and upon appeal, that the act was tortious because the order was dangerous, and given to a boy, and the duty required was *outside of the purposes* contemplated by his father in permitting him to take the service.

The courts seem in that case to have cast about for a principle on which to base a conclusion prompted by humanity and a sense of justice, and to have found it in the fact that the foreman was then engaged in a business outside of his usual routine, and which was the peculiar duty of the company, and had used his authority over the boy to employ him in that business, which was *not* in the line of business for which the boy was hired.

The courts of New York, not however without very strong and perplexing dissent, seem to have adopted the same distinction as to liability, based upon the nature of the duties. In the earliest case (*Coon v. U. & S. R. R. Co.*, *6 Barbour, 231*), recognizing the general rule which exempts the master, Mr. Justice PRATT well defines, we think, the grounds of common sense upon which it is based, and suggests the reason of the exceptions. It was a suit in which the company was held not liable to a trackman, who had been run over by a train. He says: " Some kinds of business, from their nature, necessarily require a great variety of agents and workmen, and the hazard of the business, we may well conceive, may be materially enhanced from the great number of servants it may become necessary to employ in carrying it on. The person, therefore, who contracts to enter the service of a man or company engaged in a business of that character must, when he contracts, regulate his compensation so as to meet the increased risk, or provide in the contract for indemnity against injury in consequence of the negligence of his fel-

low servants." "But," he adds, "it is obviously the duty of the employer to do nothing which would *unnecessarily* endanger the safety of those in his employ. He should not knowingly employ unskillful or negligent servants, or knowingly do any act by which the dangers *ordinarily* connected with the particular business should be increased, without at least giving notice to those who may be affected by it." Considering the cases as put by way of example, and not as exhaustive of the exceptions, we have, in the last quotation, something like a guiding thread furnished by sound reason. It suggests the class of master duties, which all the employés, high and low, have the right to expect him to perform for their general safety, while they assume the risks incident to the ordinary methods of business, the use of proper machinery, and the negligence of co-workers in those departments and processes which the employer is not expected to oversee in person. And with regard to these special duties required of the master, it might be reasonably held that he is equally liable for negligence in his own person, or in that of an agent acting for him, although the agent may be also a fellow-workman with the others. *Quo-ad hoc* he is the master. Subsequent cases run along the line of demarkation, not without recalcitration.

In *Wright v. N. Y. Cen. R. R. Co.*, *25 N. Y.*, *563*, the court, after laying down very explicitly the rule exempting the master, in case of negligence by a fellow servant, also says: "The master is liable to his servant for any injury happening to him from the misconduct or personal negligence of the master, and this negligence may consist in the employment of unfit and incompetent servants and agents, or in the furnishing, for the work to be done, or for the use of the servant, machinery or other implements and facilities improper and unsafe for the purposes to which they are to be applied," quoting many authorities.

With regard to these duties it might be very well to apply the maxim, "*qui facit per alium facit per se.*" Further on, it is said that, to charge the master, "it is not enough that the foreman and general superintendent of the work is guilty of negligence, causing injury to the subordinates," for which is cited *Wyman v. Jay, 5 Exch., 352.*

The case of *Flike v. Boston and Albany R. R. Co., 53 N. Y., 549,* is one in which the administrator of a fireman sued the company, and in the court below recovered judgment for his death. He was killed, it appeared, by the negligence of the company's agent at Albany, who was intrusted with the duty of making up and dispatching trains, hiring and stationing brakemen, etc. He sent out a train with a deficiency of brakemen, whereby some of the cars, becoming detached and uncontrollable, ran against the engine of deceased and killed him. Upon appeal it was affirmed by a divided court. Chief Justice CHURCH, in delivering the opinion, acknowledged the difficulty in applying the rule in actions against corporations whose whole business can only be transacted by agents, who, in some sense, are servants. After alluding to a former case (*39 N. Y., 468*), in which it was held that a corporation was liable, if negligence, causing injury to a subordinate servant, *could be imputed to the directors,* he says: "The true rule, I apprehend, is, to hold the corporation liable for negligence, or want of proper care in respect to such acts and duties as it is required to perform and discharge *as master* or principal, without regard to the rank or title of the agent intrusted with their performance. *As to such acts,* the agent occupies the place of the corporation, and the latter should be deemed present, and consequently liable for the manner in which they are performed. If an agent employs unfit servants, his fault is that of the corporation, *because* it occurred in the performance of the *principal's duty,* although

.only an agent himself. So in providing machinery or materials, and in the general arrangement and management of the business, he is in the discharge of the duty *pertaining to the principal.*" Three of the associate justices concurred in the affirmance, and three dissented, giving no reasons.

There is a class of cases, *sui generis*, not applicable to any question presented by this record, but which having, some of them, been pressed by counsel, it is proper to notice. The leading one of this group, and perhaps the clearest, is that of *Mann v. Oriental Print Works, 11 Rhode Island Reports, 152*. The case, with comments by the learned author of Redfield on Railways, may also be found in the *fourteenth volume* of the *American Law Register (N. S.), p. 728*. The principle of these cases entered also into the decision of Fort's case in *Dillon and 17 Wallace (supra)*. They hold that the company or master is liable for an injury to an employé, who has been put under the control of another, and been taken by that other from the work which he was employed to do, and put at something else, which *was* within the authority and line of duty of the superior workman controlling him, but *not* within the business contemplated by the injured party, on his employment. Where all these conditions combine, there is a very respectable weight of au-. thority to fix liability upon the principal employer. I will not attempt to discuss the reason of these decisions until a case arises, lest I might come within the range of the censure of the honored ex-Chief Justice of Vermont. He says that the opinion in *Mann v. The Oriental Print Company* commends itself to all lovers of justice, but may possibly encounter some distrust from that large class of the profession who, from habit or education, look *first* for symmetry and then for justice.

Returning to the matters in question, it may not be im-

proper to close the review of the cases with the results as they appear to some of our most eminent text writers. The views of Mr. Wharton have been already given.

*Mr. Thompson,* in his work on *Negligence, vol. 2, p. 1028,* says, that a mere *foreman* of work is generally regarded as a fellow-servant, under the rule, but if the master has delegated to him, or to a superintendent, the care and management of the entire business, or a distinct depart- ment thereof, then the rule may be different. He says, " a true expression of the rule seems to be, that, in order to charge the master, the superior servant must so far stand in the place of the master as to be charged with duties towards the inferior servant which, under the law, *the master owes to such servant.*

*Mr. Wood* in his work on *Master and Servant, page 860,* extracts from all the cases, the following rule : " When- ever a master delegates to another the performance of a duty to his servants, which the master has impliedly con- tracted to perform in person, or which rests upon him as an absolute duty, he is liable for the manner in which that duty is performed by the middle-man whom he has selected as his agent, and to the extent of the discharge of these duties by the middle-man, he stands in the place of the master ; but as to all other matters, he is a mere co- servant, and the question is not whether the master reserved oversight and discretion to himself, but whether he did in fact clothe the middle-man with power to perform his duties to the servant injured." This seems to us to em- brace all the conditions under which, by the current and superior weight of authority, the master has been held liable for the acts of negligence of one employé, by which another has been injured. To the like effect is the conclusion of *Mr. Cooley,* in his work on *Torts, page 560, et seq.*

*[margin note: 3. Liabil- ity of mas- ter for neg- ligence of middle- man.]*

By these conclusions, and the evidence upon which they are based, the instructions must be tested.

Taking up, first, those given by the court of its own motion, and as intended to cover the whole matter, we find the first seven to be general, upon the subject of negligence, and contributory negligence. They express the law correctly in the main, and as applicable to the evidence. The jury are advised that the whole subject of negligence on one hand, and of contributory negligence on the other, is for them to determine.

The eighth is special with regard to the capacity and intelligence of the boy. It is to the effect that the measure of care, skill and diligence required of him to avoid the imputation of contributory negligence, is such as might be reasonably expected from a person of his age and capacity.

4. SAME: Master's duty to explain dangers of machinery.      The ninth instruction is in full, as follows : " Where a child is employed at or about dangerous machinery, it is the duty of the employer to see that he is of sufficient age and intelligence to understand the nature of the risks to which he is exposed. And it is the further duty of the employer, *when explained to him*, (sic), the risks reasonably to be apprehended, in such a manner as to enable a person of his youth and capacity, to intelligently appreciate the nature of the danger ordinarily attending its performance, and a failure to do this would be a want of ordinary care in the employer, and it is for the jury, under all the circumstances of the case at bar, to say whether the defendants have discharged their duty in that behalf, and if not, they were guilty of negligence. And in determining this question, the jury should, together with the other facts proven, take into consideration the age, capacity, intelligence and character of the injured party, as shown by the. testimony, as also the nature of the employment,

the machinery used, and the dangers reasonably to be apprehended from its use in the ordinary course of the employment at the time of the injury, and what directions he had received, and what cautions about such employ-ment from the defendants or their authorized representative."

Whilst this instruction properly qualified might be considered as embodying the abstract law upon the points mentioned, it seems to us, in the particular case, calculated to mislead, and to make the impression upon the jury of a minuteness and detail of precautionary instructions, not generally required, nor, in most cases, practical. As we have said before, the evidence would not have justified the jury in finding under the circumstances that Hall was guilty of any negligence, or failure of duty, in the original employment. There was no doubt left but that the boy was of sufficient intelligence to understand, and from his own evidence it is plain that he did understand, the nature of the very risk by which he was injured. The real questions presented by the evidence were whether he was wrongfully caused to incur it, and whether whilst incurring it he exercised that care and circumspection to avoid it which might reasonably be expected from his years; and if both these questions were answered in the affirmative, then arose the further question, whether the firm was responsible for Wheeler's conduct.

The instructions tended to divert the minds of the jurors from these essential points, and to make the liability of the company depend upon a failure by Hall, through himself or another, to give detailed and special warnings, as to all dangers reasonably conceivable, before letting the boy go to work. A very anxious, careful and humane man would do that, but it is not the usual course. An employer *must* do that not only with minors, but adults also, with regard

to latent dangers, not discoverable by a reasonable and or-
dinary exercise of diligence on the part of the employé.
The difference is, that as great diligence in seeing and ap-
preciating dangers is not to be expected of a minor as of
an intelligent adult.   But the rule is the same, and the
master is not required to explain patent dangers at all,
which are ordinarily incident to the service, and which it
may reasonably be expected, under all the circumstances,
the particular employé can see and appreciate.  See *Thomson
on Negligence, volume 11, p. 978;* also as to minors, *page 977,*
where it is said, citing authorities, that "a minor who
enters a particular service, is deemed to assume the ordi-
nary hazards incident to the service, such as risks of injury
from open defects in machinery and appliances, the same
as an adult."   The instruction might perhaps have been to
astute legal minds the same in effect, but would have been
less apt to mislead and confuse ordinary jurors if it had
simply advised them that it was the duty of Hall by him-
self or some one else, on employing the boy and setting
him to work in the shop, to have advised him of latent
dangers attending his work, which he could not reasona-
bly have been expected, considering his capacity, to per-
ceive and understand.   This is the measure of the master's
legal duty towards all employés, to each according to
his intelligence, and beyond this, age is of no consequence.
The misleading feature of the instruction is that it seems
to make express caution necessary as to all dangers reason-
ably to be apprehended, whether patent or concealed.

The tenth and eleventh instructions were not objected
to, and need not be further noticed here.   They correctly
state the law as to the exemption of the company for
Wheeler's acts, if he were merely a fellow-workman of
the plaintiff under the same general employment, and
about the same general business, although in a superior

capacity, and leave it to the jury to say whether he was so. They further advise the jury, that if Wheeler, in the absence of defendants, was present as their authorized representative, superintending and controlling the business of the factory, and having sole charge and direction of the work and labor of Dill Phillips, they would be liable. This, as it was accepted by defendants, we need not question. The remaining instructions were on the point of negligence. Taking the instructions of the court all together as far as they go, we may say they were in one feature rather misleading than strictly erroneous, and otherwise unexceptionable.

Amongst the instructions given for plaintiff, against objection, was the second, as follows: "If the jury believe, etc., that Wheeler * * * had been left by the defendants in sole charge of the factory, and of the work of the employés therein, and had sole and exclusive direction of the work carried on therein, no one of the defendants being present directing the work, and that Wheeler was acting as the general superintendent, *or the foreman* of the defendants, they will find," etc., to the effect that he would thereby be the representative of the company, and they would be liable. This was stronger than the instruction given afterwards on the same point by the court of its own motion, and was clearly erroneous. There was no proof that Wheeler, during Hall's illness, was intrusted with the general business of the concern, beyond directing the operations of the workmen in their ordinary duties. This he did under Hall's directions, reporting to him three times a day. This of itself only made him a mere general foreman; but not the *alter ego.* He could only represent the company in matters, and to the extent that he was intrusted with their management, which were the peculiar and specific duties of the company towards its employés. The mere direction of their labor made him a foreman

only.    The court, however, instructed the jury that *as foreman* he would represent the company so as to bind it to its employés.    Upon the principles of this opinion the instruction was erroneous.

5. Exceptions to instructions, how made.    The third instruction was to the effect, that if they found for plaintiff they might, amongst other things enumerated, include the value of medical services.    Counsel for appellees

6. DAMAGES: concede the error on this point, but say it was inadvertent, Medical expenses in personal injuries. and insist that we should disregard it, because it was not specifically pointed out.    Leaving out the statements of facts in briefs, the record gives no warrant for supposing that appellant's counsel were aware of the inadvertence, and stood silent on their general objection, without calling the attention of the court to the error.    We think, indeed, that counsel owe it to the judges at *nisi prius*, to be specific in their objections, otherwise they must needs fall into many inadvertent errors in the haste and confusion of trials.    But that might have been done orally, and if it were not, we could grant no relief.    In the record it suffices to show a general objection to a particular instruction, which must prevail if any material part be bad, unless it be divisible into wholly disconnected parts.    Our rulings have not gone further than to hold bad a general objection to several instructions made *in solido*, if either one be good.    A remittitur to the full extent of the highest evidence as to medical expenses and nursing, might perhaps be allowed here, under our rulings, but that would not cover other errors, and would be fruitless.

Two of the instructions asked by defendants were refused.    They were as follows :

First—" If the jury believe from the evidence that E. M. Wheeler was a fellow-workman of the said Dill Phillips, and that on the day of said accident they were engaged in a common employment in the shop of defendants, and that

Phillips was acting as an assistant or under-workman to Wheeler, and was doing such part of the work in the shop as Wheeler directed, and that Wheeler is not shown to be an incompetent or unreliable workman, such as the defendants had no right to employ in the work in which he was engaged, then, if any injury occurred to the said Phillips, even by the negligence or carelessness of said Wheeler, these defendants can not be held liable for the same; because, under such circumstances, the negligence of the fellow-workman can not be imputed to the employer."

Fifth—" If the jury find from the evidence that Dill Phillips was an active, bright, and intelligent boy, of nearly fourteen years of age, and of good mental and physical ability; that from instructions received from defendants, as well as by actually running said planing machine with perfect success for three of four days, Dill had become fully acquainted with all of the dangers ordinarily to be apprehended from such machine, and notwithstanding this, received any injury from the same, caused directly by his own careless act, the defendants can not be held liable for such injury."

The third seems to us a clear enunciation of a general principle, applicable to the evidence, and should have been given as asked. The court, however, substantially gave the same instruction elsewhere, especially in the first part of the tenth voluntary instruction, which the defendant accepted without objection.

The fifth was not proper as asked. Youths of tender age are naturally exuberant in spirits and heedless in their gestures, either at work or play. What would be carelessness in an adult, would not necessarily be such in a boy of fourteen. The jury should have been advised that to make him subject to the rule for contributory negligence he should have failed in that degree of care which Wheeler might have reasonably expected such a boy to exercise.

Strictly, that would be the only carelessness, which could be called want of care, but the jury might not so understand.

For the errors above indicated, the judgment must be reversed. As there must be a new trial, we forbear to comment on the evidence to determine whether in the absence of other errors, it would support the verdict. The new trial will be upon the evidence then presented. As this opinion has been long and argumentative, we deem it not amiss, by way of recapitulation, to· say that, to support a verdict for plaintiff, it must show with a weight preponderating in the minds of the jury, that the company was guilty of negligence, as to some of the duties imposed by law upon it, specially, as master. And we add, that the negligence of any one to whom these special duties have been intrusted, with regard thereto, whether fellow-workman or not, will be the negligence of the company. These principles are to be considered in connection with the established doctrine of contributory negligence on the other side. None of these principles are affected by the minority of the plaintiff, as such ; but his age, physical capacity and intelligence, as shown to the jury, may properly be considered by them as elements in determining questions of due care, either from the company to him, or on his own part to avoid accident. The mere negligence of a foreman, in directing the operations of the youth, within the scope of his ordinary and contemplated employment, can not be imputed to the company. What the line of duties may be which are specially required of the master by the policy of the law, can, we hope, without much difficulty, be derived from the excellent formulations given above by Messrs. Wharton, Thompson, Wood and others, who do not materially differ from each other. Their conclusions are sound, rational, and supported by well considered cases.

Reverse and remand for a new trial, etc.