### COULTER v. STATE.

### Opinion delivered November 6, 1911.

1. HOMICIDE—EVIDENCE.—Where, in a prosecution for murder, there was a conflict in the testimony as to whether the decedent had his pistol and had endeavored to draw it when defendant shot him; it was competent for the State to show that immediately after the killing defendant had decedent's pistol. (Page 563.)

2. SAME—EVIDENCE—STATEMENT BY DEFENDANT.—It was competent, in a prosecution for murder, for the State to prove a declaration made by the defendant relative to the killing. (Page 563.)

3. APPEAL—HARMLESS ERROR.—The defendant in a murder case can not complain of the introduction of improper evidence tending to show malice or an abandoned disposition on his part where he was found guilty of manslaughter. (Page 563.)

4. HOMICIDE—EVIDENCE.—Though it is competent, in a murder case, to prove decedent's reputation for violence whenever there is a doubt as to who was the aggressor, it is not competent to prove that decedent had said that he had been sentenced to the penitentiary, or that he was "a desperate nigger." (Page 563.)

5. SAME—SELF-DEFENSE—INSTRUCTION.—It was not error, in a prosecution for murder, to instruct the jury that if they "believe from the evidence that the defendant could have at any time from the beginning of the difficulty, if you find that there was a prior difficulty, to the ending of the last meeting between himself and the deceased, when the deceased was killed, reasonably withdrawn from or avoided the difficulty with safety to himself, but failed to do so, he could not justify the killing on the ground of self-defense." (Page 564.)

Appeal from Sevier Circuit Court; *J. T. Cowling,* Judge; affirmed.

(No brief was filed for appellant.)

*Hal L. Norwood,* Attorney-General, and *William H. Rector,* Assistant, for appellee.

FRAUENTHAL, J. The defendant, Jim Coulter, was indicted for the crime of murder in the second degree, charged with killing one Burton Coulter. He was convicted of manslaughter, and sentenced to the State penitentiary for a period of two years. In his motion for a new trial a number of errors are assigned why the judgment should be reversed. After a careful examination of this case, we think that the only errors assigned which are of sufficient importance to be noted in this opinion relate to the rulings of the court relative to certain testimony and to certain instructions.

The defendant and the deceased were brothers, and on the night of December 24, 1910, went together to a colored church, where a "festival" was in progress. It appears that both the defendant and deceased had been drinking intoxicating liquors, and probably to some extent were under their influence. Soon after they got to the church, the deceased became rather boisterous, and, walking up the aisle, exclaimed that he could whip twenty men. The defendant then left the church, and the deceased followed him, and, after going a short distance, they began to quarrel, and, as one of the witnesses expressed it, "got into a racket." The testimony upon the part of the State tended to prove that they then proceeded a few steps further, when another brother named Dow and a nephew came to them and requested the deceased to go back to the church. The deceased told them to go on to the church, and that he and defendant would follow. The brother Dow then began reproving them for their unbrotherly and boisterous conduct, and the deceased then began crying, and requested defendant to come to him and talk with him. Deceased then walked up to him, and told him that he did not have anything against him, and defendant said, "Yes, you have, Burt." Thereupon, deceased said: "If you think I have, then here is my gun," and handed him his pistol. About this time, the nephew stepped up to the defendant and said: "There ain't anybody going to run over little Jim," meaning the defendant. The deceased then asked for his gun, and, seeing that it was his nephew who had spoken, he said he did not need his gun for him, but could fight him from the shoulder, and began pulling off his coat. While he was pulling off his coat, the defendant pulled his pistol

from his pocket, and fired it at deceased, exclaiming, "Now die, damn you!"

The shot took effect in the head of the deceased, resulting in his death shortly thereafter. Immediately after firing the fatal shot, defendant went to the church, which was only a short distance away, and upon entering it ordered all the people out of the church, and at the same time exhibited two pistols, and said that he had shot Burt.

It is urged that the court erred in permitting the introduction of the testimony as to what occurred at the church after the homicide. The defendant testified that he had shot the deceased in self-defense; that the deceased had not handed his pistol to him, but on the contrary had retained it, and had endeavored to draw it when he fired the shot at him. It was therefore perfectly competent to show that the defendant, at the time he entered the church immediately after he shot deceased, had two pistols, for this testimony tended to corroborate the witness who had testified that the deceased had handed his pistol to the defendant before the shooting, and that he was wholly unarmed when the defendant fired the fatal shot. This testimony also consisted of statements made by the defendant that he had shot the deceased, and it was perfectly competent for the State to prove this as a declaration made by the defendant relative to the killing. This occurred a few minutes after the homicide; and, even if it should be thought that the statements made by the defendant in ordering the crowd out of the church were not a part of the *res gestae,* they could not be considered prejudicial in this case. The statements could only have been prejudicial by reason of their showing malice on the part of the defendant or an abandoned disposition; but these elements would only tend to show that the crime was that of murder. Defendant was acquitted of that crime, and only found guilty of manslaughter. If it was error to permit the introduction of this testimony, it could not therefore be prejudicial, in view of the crime of which the defendant was convicted.

Complaint is also made because the court refused to permit the defendant to prove that the deceased had said that he had been sentenced to the Texas State Penitentiary, and that he was "a desperate nigger." The court, however, permitted

defendant to fully prove the general reputation of the deceased for violence and bloodthirstiness. It was not competent to prove specific acts in order to show the bad character of the deceased. The violent and dangerous character of the deceased is permitted to be shown in evidence when the facts and circumstances attending the commission of a homicide make it doubtful as to who was the aggressor. But such evidence must relate solely to the general character of the deceased for violence, and can not be established by specific acts which do not form a part of the *res gestae.* *Palmore* v. *State,* 29 Ark. 248.

It is urged that the court erred in its rulings with reference to certain instructions which were given, and others which were refused by it. We have carefully examined all these instructions, and find that the court fully and correctly instructed the jury upon every element constituting this crime and relative to every issue involved in the case. In effect, the instructions which the court gave covered every principle advanced in the instructions which were requested by the defendant. In regard to the issue of self-defense it gave the following amongst other instructions, which is chiefly complained of:

"13. If the jury believe from the evidence that the defendant could have at any time from the beginning of the difficulty, if you find that there was a prior difficulty, to the ending of the last meeting between himself and the deceased, when the deceased was killed, reasonably withdrawn from or avoided the difficulty, with safety to himself, but failed to do so, he could not justify the killing on the grounds of self-defense." An instruction very similar to this was approved in the case of *Fitzpatrick* v. *State,* 37 Ark. 252; see also *Dolan* v. *State,* 40 Ark. 454.

Upon an examination of the evidence adduced upon the trial of this case, we are of the opinion that it would have warranted the jury in returning a verdict for a higher grade of homicide; and upon a careful consideration of the entire record we are unable to find that the lower court committed any error which deprived the defendant of a fair and impartial trial. The judgment is accordingly affirmed.