TROTTER *v*. STATE.

Opinion delivered May 9, 1921.

1. HOMICIDE—MANSLAUGHTER—INSTRUCTION.—In a case where the jury might have found the defendant guilty of involuntary manslaughter, an instruction that if the killing was in the prosecution of a lawful act done without due care and circumspection it was voluntary manslaughter, was erroneous and prejudicial where the jury found him guilty of voluntary manslaughter, since, if the jury had been properly instructed, they might have found him guilty of involuntary manslaughter.

2. CRIMINAL LAW — INSTRUCTION — GENERAL OBJECTION.—A general objection to an instruction that is fundamentally defective is sufficient to direct the court's attention to it.

3. CRIMINAL LAW—CIRCUMSTANTIAL EVIDENCE—INSTRUCTION.—An instruction to the effect that when the State relies upon circumstantial evidence the chain of circumstances must be so convincing of defendant's guilt as to exclude every other reasonable hypothesis was properly refused in a case where the State did not depend wholly upon circumstantial evidence for conviction.

4. HOMICIDE—EVIDENCE—REPUTATION.—In a prosecution for murder where a witness testified that the reputation of decedent for turbulence and violence was bad, it was not error to refuse to permit the witness to state his opinion as to whether she was a dangerous woman, as the individual opinion of the witness concerning her character does not tend to prove that defendant had knowledge of such character.

5. HOMICIDE—DEGREE OF MANSLAUGHTER—MODIFICATION OF SENTENCE. —Where the court erroneously instructed the jury with reference to the degrees of manslaughter, and the jury found defendant guilty of voluntary manslaughter, and assessed the maximum punishment therefor, and the evidence would have justified a finding of guilt of involuntary manslaughter, the judgment will be modified, unless the Attorney General elects to have the cause remanded for a new trial, and a judgment entered reducing the sentence to imprisonment in the State penitentiary for one year, the maximum punishment for involuntary manslaughter.

Appeal from Drew Circuit Court; *Turner Butler,* Judge; affirmed with modification.

*Henry & Harris,* for appellant.

1. The evidence is not sufficient to sustain the verdict. It will not support a verdict of any higher degree of homicide than involuntary manslaughter. 34 Ark. 639.

2. There was error in refusing to admit testimony as to reputation of deceased. 2 Wharton, Cr. Law, § 1099; 2 Duval 328; 1 Metc. 370; 31 Miss. 504; 50 Mo. 357; 25 Mich. 405.

3. The court erred in its instructions to voluntary manslaughter. C. & M. Digest, § 2356; 99 Ark. 188; 117 *Id.* 302.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

1.   The evidence is sufficient to sustain the verdict. 75 Ark. 246; 110 *Id.* 402.

2.   Testimony as to threats and dangerous character of deceased, was admissible.   29 Ark. 248; 139 *Id.* 446.

3.   There is no error in the instructions.   C. & M. Digest, § 2345.

WOOD, J.   Appellant was indicted for murder in the first degree in the killing of Fannie Read.   He was tried and convicted of voluntary manslaughter.   From the judgment sentencing him to imprisonment in the State penitentiary for a period of five years, he appeals to this court.

The appellant, a negro eighteen years of age, and Fannie Read, a negress about thirty years old, on the 8th of August, 1920, were living in illicit cohabitation at Tennessee Spur in Drew County, Arkansas.   On the night of that day, and near the house in which they were living, a gun was discharged and appellant and Fannie Read were observed running close together for a short distance.   They stopped and were scuffling when a gun was fired again and Fannie fell.   She was shot in the right groin with bird shot or buck shot and died from the effects of the wound.

It could serve no useful purpose to discuss in detail the testimony.   There was evidence to warrant the jury in finding the appellant guilty of voluntary manslaughter.   The testimony of appellant was in part as follows: "I had some puppies there, and there was something the matter with the chickens, and I got up (out of bed) to see what the trouble was.   Fannie was out there with the gun and said, "You son-of-a-bitch, I told you I was going to get you," and then she shot and ran.   I ran after her to take away the gun.   While we were tusseling over it, it went off and shot her.   We were up close together; both of us had hold of the gun; she grabbed my broken arm; I snatched it and it went off.   I didn't know the gun was loaded, but I saw her unbreech it while going down the road.   She got the gun out of her room.

It was my gun—a single barrel shotgun. I didn't shoot her. I could not have shot her. My arm was in a sling and in splints from my wrist to my shoulder and I could not get the gun up to my shoulder.'' The above testimony, if believed, would have warranted the jury in finding appellant guilty of involuntary manslaughter. The court gave the following instructions on manslaughter:

''8. Manslaughter is the unlawful killing of a human being without malice, express or implied, and without deliberation.

''9. Manslaughter must be voluntary upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible. This is voluntary manslaughter.'

''10. If the killing be in the commission of an unlawful act, without malice and without the means calculated to produce death, or in the prosecution of a lawful act done without due care and circumspection, it shall be manslaughter. This is voluntary manslaughter.

''11. Under the indictment in this case it is competent, if the proof justifies it, to find the defendant guilty of murder in the first degree, murder in the second degree, voluntary manslaughter or involuntary manslaughter.

''16. If you have a reasonable doubt as to whether it is murder in the second degree or voluntary manslaughter, you should convict only of manslaughter. If you have a reasonable doubt whether it is voluntary or involuntary manslaughter, you should convict only of involuntary manslaughter.''

The appellant objected and excepted to the ruling of the court in giving each of the above instructions. While the court told the jury that they might find appellant guilty of involuntary manslaughter, there is no instruction informing the jury as to the punishment prescribed for such offense.

The testimony showed that the gun, from which the fatal shot was fired, was a single barrel shotgun. Ac-

cording to the testimony of the appellant, after Fannie Read fired the gun he ran after her for the purpose of disarming her and was trying to snatch the gun away from her when the same was discharged, causing her death. If the jury believed that such was the intention of appellant, this conduct on his part was not unlawful; but the jury was warranted in concluding that the death of Fannie Read was thus caused without due care and circumspection on the part of the appellant.

The court, in its instruction No. 10, told the jury that, if the killing was in the prosecution of a lawful act done without due care and circumspection, it was voluntary manslaughter. Applying the above instruction to the testimony, if the jury believed and accepted the testimony of the appellant, they had no alternative but to find him guilty of voluntary manslaughter. Instead of telling the jury that such conduct in the prosecution of a lawful act done without due care and circumspection was involuntary manslaughter, the court told the jury just the opposite. This was fatal error and highly prejudicial to the appellant; because, if the jury had been told that if they believed that the killing was done in the prosecution of a lawful act, but without due care and circumspection, they might find the appellant guilty of involuntary manslaughter, the jury under the evidence then would have been authorized to find, and might have found, the appellant guilty of involuntary manslaughter.

The jurors were not lawyers and did not understand the difference between voluntary and involuntary manslaugther. Under their oaths they had to try the case according to the law as declared by the court. The court, in its instructions, made no distinction between voluntary and involuntary manslaughter. The instructions concerning manslaughter were in irreconcilable conflict, and the jury, in attempting to follow them, would be led into inextricable confusion. The mistake of the court in giving conflicting and confusing definitions was not merely one of verbiage or a collateral misprision, which the jurors could themselves observe and correct. The

jurors, being laymen, could not correct the mistake of the court. The fact should be noted here that the framers of the Revised Statutes and the Legislature of 1837 which adopted these "Revised Statutes" defining "manslaughter" as set forth in section one, and "voluntary manslaughter" as set forth in section two, do not designate the offense prescribed in section three as "involuntary manslaughter." Chap. 44, § 3, Revised Statutes. The offense set forth in this section was first designated by our court as "involuntary manslaughter" in *Harris* v. *State*, 34 Ark. 469-79. The first digesters who designated it as such were Crawford & Moses, § 2356, C. &. M. Digest. When the Legislature itself has not undertaken to define "involuntary manslaughter," and only the Supreme Court and digesters have undertaken to do so, how could a jury of laymen know the difference between voluntary and involuntary manslaughter? They could not know, and even if they did know, they are nevertheless bound to take the law from the trial court. The mistake was one which the court alone could correct. The court was not asked by the State to correct it, and did not correct it. The appellant, by his general objection to that particular instruction, called the court's attention to such defects as rendered the instruction fundamentally wrong. The error was one of substance and not of form. It was an inherent defect. Therefore, a general objection to that particular instruction was sufficient to direct the attention of the court to it. *Fones* v. *Phillips*, 39 Ark. 17-40.

2. Appellant complains of the ruling of the court in refusing to give its prayer for instruction concerning the effect of circumstantial evidence, as follows:

"A. You are further instructed that when the State relies upon circumstantial evidence, to justify the conviction of a person charged with crime, then such chain of circumstances, as a matter of law, must not only be inconsistent with defendant's innocence, but must be so convincing of his guilt as to exclude every other reasonable hypothesis, and must establish in the minds of the

jury an abiding conviction, to a moral certainty, of the truth of the charge, and unless this is done in this case then it is your duty to acquit the defendant.''

There was no error in the ruling of the court. This was not a case in which the State depended wholly upon circumstantial evidence for the conviction of appellant.

3. J. D. Ratterree testified that he knew the general reputation of Fannie Read while she lived in the town of Monticello for turbulence and violence, or peace and quietude—that such reputation was bad. The witness was asked: ''From that reputation did you consider her a dangerous woman?'' The court would not permit the witness to answer the question, and the appellant duly excepted to the ruling of the court. This ruling of the court was correct. The individual opinion of a witness concerning the character of the deceased is not competent testimony because that does not tend to prove that the accused had knowledge of the fact that the deceased was a person of turbulent, violent and dangerous disposition. But when such is the general reputation of the deceased, it tends to show that the accused had knowledge of such character; and where it is doubtful as to who was the probable aggressor, such testimony is competent because it tends to throw light upon that issue.

''The reputed character of the deceased on a charge of homicide,'' says Mr. Greenleaf, ''may be evidential as indicating his reasonable apprehension of attack upon an issue of self-defense; for, in a quarrel or other encounter, the opponent's violent or turbulent character, as known to the accused, may give to his conduct a significance of hostility which would be wanting in the case of a man of ordinary disposition. It is the essence of this principle, however, as all courts concede, that the reputed character of the deceased should have been known to the accused.'' 1 Greenleaf on Evidence, p. 42; § 14; 1 Wharton's Criminal Evidence, p. 246; Underhill on Evidence, §§ 324, 325; *Palmore* v. *State*, 29 Ark. 248, 261, 262, and cases there cited; *Coulter* v. *State*, 100 Ark. 561-564.

4. The jury returned a verdict of guilty against the appellant for voluntary manslaughter and fixed his punishment at a longer term in the State penitentiary than the shortest period prescribed for that offense. Therefore, it is manifest that if the jury had had an opportunity to return a verdict of guilty against the appellant for involuntary manslaughter and had found him guilty of such offense, they would not have fixed his punishment at a shorter period than one year, which is the longest period prescribed as punishment for that offense. The prejudice to appellant in the granting of instruction No. 10 will be cured if the punishment of appellant is fixed at one year in the State penitentiary instead of five.

For the error in granting the State's prayer for instruction No. 10, the judgment convicting the appellant of voluntary manslaughter must be reversed, but, as a conviction for this offense includes the conviction also for involuntary manslaughter, and as it is obvious that the jury would have assessed the maximum punishment for that offense, unless the Attorney General elects within ten days to have the cause remanded for a new trial for voluntary manslaughter, the judgment of the circuit court will be modified and a judgment will be entered here affirming the conviction of involuntary manslaughter, and certified by the clerk of this court to the keeper of the State penitentiary reducing the sentence of the appellant to imprisonment in the State penitentiary for one year for "involuntary manslaughter." *Brown* v. *State,* 34 Ark. 232-239; *Noble* v. *State,* 75 Ark. 246-250; *Routt* v. *State,* 61 Ark. 594; *Harris* v. *State,* 119 Ark. 85-94.

McCulloch, C. J. (dissenting). Instructions Nos. 8, 9 and 10 are in the language of the statute defining manslaughter, and the error in No. 10 in declaring that the facts related constitute voluntary manslaughter was obviously clerical. It was a mere "slip of the tongue," and the meaning of the court was obvious to any one who took

notice of the language used. If appellant's counsel took notice of the error, they ought to have called the attention of the court to it by a specific objection. If they did not notice it, then it is not conceiveable that the jury took sufficient notice of it to be misled by the incorrect statement. In other words, this is an instance, I think, where it is peculiarly essential that a specific objection should have been interposed to the incorrect language in an instruction. The trial judge repeated the precise language of the statute and manifestly intended to write the word involuntary, instead of voluntary. Perhaps the error was made by the stenographer who transcribed the instruction. At any rate it is presumable that the trial judge would have corrected the error if his attention had been called to it, for it may be assumed that he did not intend to give two definitions of voluntary manslaughter. The objection to this instruction was formal and general, the same as made to the other twenty-six instructions of the court covering all of the grades of homicide.

The error is therefore harmless and should be disregarded.

Mr. Justice SMITH joins in this dissent.