CARLLEY v. STATE.

Crim. 3956

Opinion delivered September 30, 1935.

*Lee & Moore, J. F. Holtzendorff, Jas. H. Lawhorn, Jr.,* and *Trimble, Trimble & McCrary,* for appellant.

*Carl E. Bailey,* Attorney General, and *Guy E. Williams,* Assistant, for appellee.

BAKER, J. The appellant, Graham Carlley, was charged with murder in the first degree for the killing of Melton Sparks at Hazen, Arkansas. He was indicted March 5, 1934, and on March 7 change of venue was had to the circuit court of Monroe County. Upon trial appellant was convicted of voluntary manslaughter and sentenced to seven years in the penitentiary, and from the judgment of conviction comes this appeal.

In our view of this case it is unnecessary that we set out the material facts in detail, but it does become necessary to discuss one matter upon which the appellant relies for a reversal.

According to the testimony, appellant killed Melton Sparks upon the streets in Hazen, Arkansas, about 9:00 o'clock at night. Carlley shot Sparks, killing him almost instantly, then walked down the street a short distance, surrendered to the town marshal, and about two hours later was delivered to the sheriff at Des Arc. Carlley had talked with the officers transporting him to Des Arc, to the effect that, if an inquest were held that night in regard to the killing of Sparks, he desired to be present. No doubt he thought it highly important to himself that he be there. The officers had agreed with him, but the sheriff conceived it to be his duty to place the prisoner in jail, and, as between the sheriff and the prisoner, appellant here, a sharp altercation arose, resulting in a fight, wherein the sheriff knocked Carlley down with a chair, and, as the two struggled with each other, Carlley cut the coat and other clothing of the sheriff. This controversy was sharp and furious for a time, and, upon the trial of Carlley for the murder of Sparks, the sheriff, H. B. Eddins, was called as a witness and testified about this fight.

Over the objections of the appellant, the sheriff was permitted to testify in detail to all of the matters that occurred in the fight between him and his prisoner, and was permitted to exhibit the coat, cut and slit with the defendant's knife.

At that time the defendant had offered no proof or suggestion as to his character or reputation, and there was no basis or foundation of any kind, justifying the intrusion of this testimony.

Other witnesses testified about this trouble, one of them being Gene Shanks, the deputy sheriff, and another being Andy Rounsell, the town marshal at Hazen, and who had transported Carlley as his prisoner and delivered him to the sheriff. There grew out of this testimony a sharp controversy as to the cause, origin,

and extent of the trouble. During the testimony of the several witnesses, objections were constantly urged against the intrusion of this testimony, and were constantly overruled by the court.

The court, in the final ruling upon this testimony, instructed the jury that the testimony might be considered for the purpose of showing the frame of mind the appellant was in, if any, after the killing of Sparks, and whether or not he attempted to escape from the officers after his arrest.

The record in this case discloses that the altercation between the sheriff and his prisoner was hardly second in importance to the trial upon the main charge of murder in the first degree.

Without regard to the merits of the controversy, as between the sheriff and his prisoner, this matter should not have been injected into the trial. We are unable to see, or understand, how any testimony in regard to this unfortunate event could in any way explain to the jury the state of mind of the prisoner, whether before or after the killing. It certainly could not aid the jury to hear of this second fight, wholly disconnected from the murder charge, in determining the guilt or innocence of the defendant.

It is urged, on behalf of the State, that this evidence, even though improper, could not be deemed prejudicial, when considered in the light of the result of the trial; the insistence being that this testimony, at least, might have been considered by the jury to determine a question of malice, and that, since the defendant was acquitted of murder in the first and second degree, it is apparent that the testimony did not result to the prejudice of the defendant.

With this theory we cannot agree. The defendant was relying, in this case, upon the law of self-defense for an acquittal. It is unnecessary that we express any opinion as to the merits of the case, the effect of the testimony on behalf of the State as tending to prove murder, or the effect of the testimony offered by the defendant in his own defense. He was entitled to have his case fairly and dispassionately submitted to a jury.

It is argued with some show of reason that this testimony, as delivered by the sheriff, the high executive official of the county, probably put into the minds of the jurors a feeling or impression that the defendant was a boisterous, troublesome, violent and bloodthirsty man, who, after the homicide in the town of Hazen, was attempting to kill the sheriff who had him in custody, and in his violent rage slashed and cut the clothing of the sheriff in many places.

We are unable to see how the jury could disregard the effect of this testimony, when once it was presented to them, and we do not think that the defendant should have been called upon, in the trial of his murder case, to defend also against another charge, calculated seriously to impair that presumption of innocence that attends his case throughout the trial, or until the fact of guilt is established by some competent testimony. We must take judicial notice of the fact that many competent of being good jurors, peace-loving citizens of the State, cannot hear with patience and consideration this kind of testimony, and not be affected by it adversely to the interests of the defendant, and particularly is this true when this testimony is permitted to go to the jury with the approval of the trial court, over the urgent objections of defendant's counsel.

We do not disapprove the doctrine laid down in *Coulter* v. *State,* 100 Ark. 561, 140 S. W. 719. The State relies upon this as authority to sustain the conviction. The facts in the two cases are so different we cannot agree with that theory. We cannot say these matters did not tend to discredit the defendant. His efforts to establish self-defense may have been thwarted by this other altercation, or his punishment may have been increased thereby. We cannot say, but if so there was error. If improper testimony tends to disparage the effect of appellant's theory and evidence offered in his behalf, it was prejudicial. *Ware* v. *State,* 91 Ark. 561, 121 S. W. 927.

It cannot well be reasoned that the evidence offered, over the objection of the defendant, was not prejudicial, quoting from a recent opinion we find: "But it is also

settled that evidence improperly admitted must be treated as prejudicial unless there be something to show that it was not. *Brock* v. *State,* 171 Ark. 282, 284 S. W. 10; *Moon* v. *State,* 161 Ark. 234, 255 S. W. 871; *Elder* v. *State,* 69 Ark. 648, 65 S. W. 938, 86 Am. St. Rep. 220.'' *Williams* v. *State,* 183 Ark. 870, 872, 39 S. W. (2d) 295.

Proof by the State of other offenses wholly disconnected from the one upon trial was improper.

The judgment of Monroe Circuit Court is therefore reversed, and the cause is remanded for a new trial.