ROBERSON v. STATE.

Opinion delivered October 13, 1913.

CRIMINAL LAW—ASSAULT—ASSAULT WITH INTENT TO KILL—DUTY TO IN-
STRUCT AS TO LOWER DEGREES.—Where defendant is charged with the
crime of assault with intent to kill, and there is evidence tending
to show that defendant is guilty of a lower grade of offense, as
where defendant acted in the sudden heat of passion, provoked by
the prosecuting witness, it is error for the trial judge to refuse to

instruct the jury in reference thereto, when requested by the defendant.

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; reversed.

*Webber & Webber,* for appellant.

1. To constitute assault with intent to kill, or, under the statute (Kirby's Dig., § 1588), a *specific intent* to take life must be shown. 91 Ark. 505; 54 *Id.* 489.

2. The question as to whether defendant had invited or provoked the assault should have been included in the court's charge. 73 Ark. 406; 95 *Id.* 431; 104 N. W. 191.

3. It was error to charge the jury that appellant was guilty of assault with intent to kill, or not at all. The court should have charged the jury as to the lower grades of the offense. 72 Ark. 569; 43 *Id.* 289; 21 Cyc. 111; 2 *Id.* (Ill.) B., p. 748; 12 *Id.* 639-640, 18A.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. A general objection to all the instructions is not sufficient. A charge of assault with intent, etc., includes murder in the second degree. 64 Ark. 69. No specific objection to the instructions were made.

2. It is the duty of the judge to determine whether there is any evidence at all justifying a particular instruction. 50 Ark. 506; 52 Ark. 345-7.

Wood, J. Appellant was convicted in the Miller Circuit Court on an indictment charging her with the crime of an assault with intent to kill one Ethel Butler. The indictment alleged that the assault was made by striking and cutting with a hatchet. The testimony for the State tended to show that Ethel Butler was on her way home, had passed appellant's house, and was walking along talking to one of the neighbors; that appellant came upon the prosecuting witness when the latter was not looking, and cut her with a hatchet three times in the head and once on the shoulder; that she continued to cut Ethel Butler after she was down

and unconscious; that the prosecuting witness had said nothing to appellant, nor appellant to her; that she had no previous quarrel with appellant, and had not threat-.ened her. In other words, the testimony on behalf of the State tended to sustain an assault with intent to kill as laid in the indictment.

On the other hand, the testimony for the appellant tended to show that Ethel Butler, on the day before the rencounter, had shoved appellant off of the sidewalk and had made some insulting remarks to her; that on the day of the rencounter Ethel Butler was seen going in the direction of appellant's house, and was heard to say that she was going to appellant's, and that appellant had to take back something or she (Ethel) would whip her; that Ethel Butler did go to where appellant lived, and stopped just off the sidewalk at appellant's gate; that the prosecuting witness called appellant, telling her to come out; that appellant was at her well in the yard, drawing water; that she went in her house, put up the water, came out and started out of her gate, when the prosecuting witness went toward her with a drawn knife, whereupon appellant drew the hatchet and struck the prosecuting witness three times with it.

Appellant testified that the prosecuting witness had been threatening all along to whip her; had shoved her off the sidewalk; that she would say things about appellant every time the latter went to market. When the prosecuting witness threatened to whip appellant, she was accompanied by Larcenia Hall. Appellant testified that she had nailed some planks on the porch, and that was the reason she had the hatchet out there; that she was going to have the prosecuting witness arrested, and so told the prosecuting witness; that she picked up the hatchet as she started out to the gate to protect herself in case the prosecuting witness attacked her; that when she got out of the gate and made a turn to go to the officer's house, the prosecuting witness met appellant; the prosecuting witness had a long, big knife; she ran up and drew back to cut appellant, when appellant struck her

with the hatchet. Appellant testified that the reason she didn't wait until the prosecuting witness left to go for an officer was, that she had waited so many times and had not gone, and she had taken insults until she was tired of it. She was afraid of the prosecuting witness. States that she was fighting to protect herself from the knife. They were facing each other. The prosecuting witness had been meddling with appellant so much ''she got tired of it, and was going to have her arrested.'' The testimony of several witnesses tended to corroborate appellant.

Among other prayers for instructions, the appellant requested the following: 5. ''If you find that defendant struck Ethel Butler, in the sudden heat of passion caused by a provocation apparently sufficient to make her passion irresistible, you can not find defendant guilty of assault with intent to kill or murder, because a killing under such circumstances would amount to manslaughter only, and not murder.''

The court, in its charge, declared the law defining the necessary elements to constitute the crime of an assault with intent to kill, and also defining the law of self-defense. The court, in its charge, narrowed the inquiry of the jury to the question as to whether appellant was guilty of an assault with intent to kill, or whether the alleged assault was in self-defense. There was no specific objection to the court's charge given to the jury of its own motion, and, indeed, the charge as thus given, covering the phase of the evidence concerning an assault with intent to kill and self-defense, was correct. Likewise, the instruction on the credibility of witnesses.

But the question of appellant's guilt or innocence of the lower grades of assault included in the indictment was not submitted to the jury. The only issue under the instructions given by the court was whether or not appellant was guilty of an assault with intent to kill, or whether the assault was in necessary self-defense.

We are of the opinion that the court should have given appellant's prayer No. 5, which would have al-

lowed the jury to consider the lower grades of offense included in the indictment, and would have allowed the jury to convict her of a lower grade of offense if they found that appellant made the assault with a deadly weapon, but under circumstances which would have made her offense manslaughter only had death resulted.

The testimony on behalf of the appellee was sufficient to call for such an instruction. This testimony was sufficient to warrant them in returning a verdict convicting appellant of a lower grade of offense than that of assault with intent to kill. Had the court given the instruction and the jury been allowed to consider the question of the lower grades of offense included in the indictment, their verdict might have been for a lower offense, instead of the higher crime.

Where there is evidence tending to show that the defendant was guilty of a lower grade of crime, the appellant, upon request therefor, is entitled to have that issue submitted to the jury. See *Collins* v. *State,* 102 Ark. 180.

The verdict of guilty shows that the jury did not accept appellant's evidence tending to show that the assault was in self-defense. It is therefore unnecessary to remand the cause to have that issue again submitted.

The error of the court in refusing appellant's prayer allowing the jury to consider the lower grades of the offense included in the indictment will be cured if a judgment is entered against appellant convicting her of the lowest grade of offense which the jury could have found under the evidence.

For the error refusing to give appellant's prayer No. 5, the judgment will be reversed and the cause remanded for a new trial unless the Attorney General elects, within fifteen days, to have judgment entered convicting appellant of an assault and battery, the lowest offense for which she could have been convicted under the indictment.