## BOYLE *v.* STATE.

### Opinion delivered December 1, 1913.

1. WITNESSES—CRIMINAL PROSECUTION—CREDIBILITY.—The fact that a witness against accused in a criminal prosecution was in the employ of the police department of a city and employed to act as a detective, does not render his testimony incompetent, but merely goes to his credibility, which is a question for the jury. (Page 322.)

2. PANDERING—SCOPE OF LEGISLATIVE ACT.—Under Act 105, page 407, Acts 1913, directed against pandering, it is immaterial whether the female procured for purposes of sexual intercourse was at the time virtuous or not. The act prohibits the procuring of *any female* for purposes of prostitution, and it is immaterial whether she went with defendant of her own free will or not. (Page 323.)

3. PANDERING—EVIDENCE—REPUTATION OF DEFENDANT'S HOUSE.—In a prosecution for violation of the pandering act (Act 105, Acts 1913), it is error to exclude testimony tending to show that the house where it was alleged the female was taken, was not at that time, nor some time before, a place of prostitution, nor a place where it was encouraged or allowed. (Page 323.)

4. PANDERING—INDICTMENT—PROOF.—Under an indictment charging defendant with a violation of the pandering act (Acts 1913, No. 105), it is necessary for the State to show that prostitution was practiced, encouraged or allowed in the house to which the female was taken, and that she was taken there for purposes of prostitution; and to warrant a conviction it must be shown that men and women actually resorted there for illicit intercourse. (Page 324.)

5. EVIDENCE—HEARSAY.—It is improper, in a prosecution for pandering, to permit a witness to testify that a certain party told him that defendant's house had a bad reputation. (Page 324.)

6. PANDERING—EVIDENCE OF DEFENDANT'S OCCUPATION.—In a prosecution for pandering, defendant may rebut testimony that he was

engaged only in the business of maintaining a place of prostitution by showing what business he was actually engaged in. (Page 324.)

7. PANDERING—EVIDENCE OF OTHER ACTS.—Where defendant is being tried for the crime of pandering, on the issue of whether or not he practiced procuring females to enter his house for the purpose of prostitution, testimony that on other occasions he had taken other females to his place for purposes of prostitution, and as to his conduct on the street and in stores toward females, is competent. (Page 325.)

Appeal from Garland Circuit Court; *C. T. Cotham,* Judge; reversed.

STATEMENT BY THE COURT.

The Legislature of 1913 passed an act in relation to pandering, which provides, among other things, "that any person who by promises, threats, violence, by any device or scheme, by fraud or artifice * * * shall take, place, harbor, inveigle, entice, persuade, encourage or procure any female person to enter any place within this State in which prostitution is practiced, encouraged or allowed, for the purpose of prostitution, * * * shall be guilty of pandering, and upon conviction shall be punished by imprisonment in the penitentiary for a term of not less than two nor more than ten years." Act 105, p. 407, Acts 1913.

Appellant was indicted under the above statute, the indictment charging him, substantially in the language of the statute, of procuring, by promise, device, scheme, artifice, "Birdie Taylor, a female, to enter a certain house in the city of Hot Springs known as the French Flats, a place where prostitution was then and there practiced, encouraged and allowed, for the purpose of prostitution."

The State introduced testimony tending to prove that the appellant had rooms in a building known as the French Flats in the city of Hot Springs that he rented for the purpose of prostitution. One witness testified that he rented a room from the appellant and witness asked appellant if he knew where he could get a girl, and

appellant replied that he knew where he could get one girl or a hundred; that appellant and witness started out on Central Avenue looking for a certain girl whose name was Birdie Taylor. They met her on the street, and appellant introduced the witness and the girl under assumed names. Appellant told the girl that witness was his friend and that he wanted her to meet the witness. The girl asked appellant whether she should meet the witness over at appellant's house, and appellant told her that would be all right. They made arrangements to meet at appellant's place on Tuesday. Witness went up to appellant's room and a girl was in there with appellant. Appellant showed witness the room and left everything in readiness for witness and the girl. Witness hired this room from the appellant and met the girl there, and also met a certain other girl there on another occasion for the purpose of prostitution. Witness paid not only the room rent, but a dollar extra to appellant on each occasion that he met the girls.

The court permitted, over the objection of appellant, testimony to go to the jury tending to show that appellant, on other occasions, had taken other girls and women to his house, and to show the conduct of appellant on the corners of the streets and about certain stores, engaging certain women and girls in conversation, and as to his manner and deportment in introducing himself to them, and about his having accompanied other girls on various occasions prior to the offense charged herein, to his rooms at the French Flats. It is unnecessary to go into detail in setting out this testimony.

The court permitted a witness, over the objection of appellant, to testify that the house in which appellant lived had a bad reputation, and that witness was told that it was an assignation house. There was testimony on behalf of the State tending to show that the reputation of the house that appellant was keeping was that of an assignation house. Witnesses on behalf of the State were permitted to testify that appellant had no other occupation than that of keeping the assignation house.

A witness was introduced who testified that he roomed with Jack Boyle at the French Flats from April 18 to May 14, 1913; that prostitution could not have been practiced in the house during witness's stay there witnout witness's knowledge unless it was carried on very secretly. The witness was not allowed to testify that during his stay there the appellant had not permitted prostitution to be practiced in the house. The witness was asked to state whether prostitution was practiced, encouraged or allowed in said house during the time he was there, and he would have answered that it was not; that Jack Boyle did not encourage or allow prostitution in the house while witness was there. He remarked in the presence of witness that he preferred not to have ladies in the house. The court would not permit this testimony to be introduced, to which appellant duly excepted.

Appellant offered to prove by a certain witness that she applied to appellant for a room in the house where the offense charged is alleged to have been committed; that defendant stated to the witness that he did not desire to rent his rooms to women; said that she could have the room, but he wanted it understood that she could not have men calling on her there at that place while she was an occupant of the room; that appellant, after engaging in conversation with her for some time, finally stated as follows: "I believe I will rent you a room, because you look all right to me."

Appellant further offered to prove by this witness that she rented a room from the appellant prior to the date of his arrest; that while she occupied this room she had an opportunity to observe the character of the place, and that the flat was used for renting rooms; that there were no vacant rooms while witness was there; that she had not observed any misconduct upon the part of the appellant or upon the part of any one there to indicate that the house was used for prostitution or that it was a place where prostitution was carried on; that witness

would testify that appellant, besides keeping a rooming house, was working on some patents in the kitchen.

Appellant, in his brief, does not point out or insist on any specific error in the instructions of the court, and therefore we assume that they are correct, and do not set them out or comment upon them. Appellant appeals from a judgment of conviction sentencing him to the penitentiary for a period of two years. Other facts stated in the opinion.

*Rector & Sawyer,* for appellant.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

Wood, J., (after stating the facts). The appellant contends that the judgment should be reversed because it was shown that one of the principal witnesses for the prosecution was employed by the police department of Hot Springs to act as a detective in securing the testimony to convict appellant; that this witness and other witnesses had been paid for their services in procuring testimony, and that in order to secure the conviction of appellant one of the principal witnesses against him had resorted to disgraceful and infamous conduct in order to find out the alleged facts to which he testified, and had induced others to engage with him in such disreputable conduct. But the objection which appellant urges to the character and conduct of the witnesses goes only to their credibility, and therefore was for the jury and not for this court. The testimony is sufficient here to sustain the verdict.

The statute is comprehensive in its terms. It is leveled at the nefarious practice of procuring females to be used for the purpose of prostitution. The crime is designated in modern criminal statutes as *pander,* or *white slave traffic.*

While doubtless the purpose of the lawmakers primarily was to protect females who are already virtuous from the multifarious and wicked devices and schemes of the panderer, or one who for hire would seek to make

traffic and commerce of females, and thus destroy their virtue and make them prostitutes, yet in order to effectuate this purpose the act, in terms, was made broad enough to include those who, by any method mentioned in the statute, procure any female, whether virtuous or not, to engage in illicit sexual intercourse. It was only by making the law thus comprehensive and drastic in its terms that the Legislature could most successfully carry out its purpose to prevent the prostitution of females.

It is therefore wholly immaterial under the law whether the female procured for the purpose of illicit sexual intercourse was at the time virtuous or not. The statute, in terms, prohibits the procuring of *any female* for the purpose of prostitution. There is a provision in the statute directed against the procuring of females to become prostitutes, and preventing the procuring of females to enter any place in which prostitution is practiced, for the purpose of prostitution.

The contention therefore of appellant that the offense is not committed where the woman involved exercises her own discretion and goes voluntarily to the place of prostitution is not well taken; and the fact that the girl whom appellant is alleged to have procured to enter the place of prostitution was already of easy virtue and went voluntarily under the promises and by the persuasion and encouragement of the appellant is wholly immaterial. If he took her to a place where prostitution was practiced, for the purpose of prostitution, whether she went voluntarily or not, he was guilty under this statute. The evidence adduced, if believed by the jury, was sufficient to warrant them in returning a verdict against him.

The court erred, however, in excluding from the jury the testimony which appellant offered tending to show that the house where it is alleged the female involved was taken, was, for some time before that, and at that time, not a place of prostitution and a place where prostitution was encouraged or allowed. The testimony of the witnesses who lived at the place, and of those who

had opportunity for observing and knowing the facts tending to show that up to the time when Birdie Taylor was taken to the house that it was not used as a house of prostitution and that illicit sexual intercourse was not allowed to take place there, was competent and relevant testimony and was not cumulative. This testimony tended directly to rebut the testimony introduced on behalf of the State tending to show that the house was used and had been used continuously for some time prior to the alleged offense, and until that time, as a house of prostitution. It was necessary for the State to show, under the charge made in the indictment, that the house to which Birdie Taylor was taken was a place in which prostitution was practiced, encouraged or allowed, and that she was taken there for the purpose of prostitution. For this purpose the court correctly permitted testimony to go to the jury showing that the house had the reputation of being a bawdy house or a house of assignation. But the reputation of the house for bawdry or assignation purposes was not alone sufficient to convict. It was a circumstance for the jury to consider. To warrant conviction the proof would also have to show that men and women actually resorted there for illicit intercourse. See 14 Cyc. 410; *State* v. *Brunell,* 29 Wis. 435; *Lismore* v. *State,* 94 Ark. 210.

This proof being competent on the part of the State to show the guilt, it was certainly also competent on the part of the defense to show to the contrary, which the excluded evidence tended to do. The court should not have permitted the witness to testify that a certain party told him that the place had a bad reputation. This was purely hearsay.

The court also should have permitted the testimony offered, tending to show that appellant before and at the time of the alleged offense, was engaged in the business of invention and of securing patents for his inventions. This testimony tended to rebut the proof introduced on the part of the State tending to show that the appellant

was engaged only in the business of maintaining a place of prostitution.

The court did not err in permitting the testimony tending to prove that appellant had on other occasions taken other females to his place for the purpose of prostitution, nor the testimony tending to show his manner and conduct toward females on the street corners and at stores. This was relevant to the issue of whether or not he was indulging in the practice of procuring females to enter his house or rooms for the purpose of prostitution.

For the error indicated the judgment is reversed and the cause remanded for a new trial.