ROSE *v.* STATE.

Opinion delivered March 6, 1916.

1. CARNAL ABUSE—CONVICTION—INDICTMENT FOR RAPE.—An indictment for rape of a female under the age of sixteen years will sustain a conviction of carnal abuse.

2. CARNAL ABUSE—SUFFICIENCY OF THE EVIDENCE.—The evidence held sufficient to sustain a verdict of carnal abuse.

3. TRIAL—IMPROPER ARGUMENT—INVITED ERROR.—Improper argument can not be complained of if it is necessitated by what was said in the argument of an adversary, the error being invited.

Appeal from Conway Circuit Court; *M. L. Davis,* Judge; affirmed.

*Edward Gordon* and *Sellers & Sellers,* for appellant.

1.    The evidence is insufficient to support the verdict. The testimony of the prosecutrix is supported by no evidence whatever.   6 Cal. 221; 65 Am. Dec. 506.

2.    The motion in arrest should have been sustained. Defendant was charged with rape, he could not be convicted of carnal abuse.   54 Ark. 664; 50 *Id.* 330; 44 *Id.* 265; 93 *Id.* 168; 83 *Id.* 379; 75 *Id.* 574.

3.    The cause should be reversed because of the improper arguments of counsel for the State.   12 Cyc. 571; 20 Pac. 719; 62 *Id.* 1035; 32 N. E. 305; 87 Mo. 574; 18 S. W. 1003; 15 Neb. 20; 62 N. H. 675; 64 Vt. 432; 34 So. 1025; 39 *Id.* 370; 66 N. E. 207; 62 N. W. 709; 88 S. W. 339; 100 Ark. 100; 74 *Id.* 259.   There is no way of keeping counsel within bounds except by setting aside the verdict.   66 Ark. 126; 61 *Id.* 130; 62 *Id.* 516; 71 *Id.* 415; 70 *Id.* 306; 80 *Id.* 23; 81 *Id.* 231 and 23 other cases from the Arkansas Reports.

*Wallace Davis,* Attorney General and *Hamilton Moses,* Assistant Attorney General, for appellee.

1.    The motion in arrest was properly refused.   Kirby's Digest, § 2005, 2008, 2413, 96 Ky. 73, 75 Ky. L. Rep. 55; 97 Mass. 61; 82 Ky. 549; 75 Ark. 267; 50 *Id.* 236; 103 *Id.* 119.

2.    There was no prejudicial error in the remarks of the prosecuting attorney.   109 Ark. 137; 84 *Id.* 128; 91 *Id.* 43; 74 *Id.* 256; 95 *Id.* 326; 69 Wisc. 32; 100 Minn. 396; Thompson on Trials, § 964; 13 Col. 69; 77 S. W. 216; 38 Cyc. 1501; 185 Ill. 546; 93 Ark. 66; 75 *Id.* 350; 77 *Id.* 1; 112 *Id.* 267.

3.    The testimony supports the verdict and there is no error in the court's instructions.   109 Ark. 449; 104 *Id.* 142; 101 *Id.* 570; 109 *Id.* 130, 138; 92 *Id.* 120; 50 *Id.* 511.

Hart, J.    Appellant was indicted for the offense of rape upon a female under the age of sixteen years and convicted of the offense of carnally knowing her, under section 2008 of Kirby's Digest.

From a judgment of conviction he has duly prosecuted an appeal to this court.

It is insisted by counsel for appellant that the offense of which he was found guilty, is not in a degree of or included by the one for which he was indicted as provided by section 2413 of Kirby's Digest.

(1) We have decided that an indictment for rape of a female under the age of sixteen years will sustain a conviction of carnal abuse. The difference between the two offenses being that in order to convict him of the greater, it was necessary to charge and prove that he had carnal knowledge of the female mentioned, forcibly and against her will and consent, whereas the lesser offense was made out by proof of carnal knowledge of her, though had by her consent. See *Coates* v *State,* 50 Ark. 336; *Henson* v. *State,* 76 Ark. 267; *Peters* v. *State* 103 Ark. 119.

The facts are as follows: The mother of Maggie Moreland, the prosecuting witness was dead, and she was placed in the Orphan's Home at Morrilton, Arkansas. On the 15th day of June, she went to the home of Gilbert Rose to live as a member of his family, and stayed there about two weeks when she was carried back to the Orphan's Home because she had stated that the defendant, Richard Rose, a brother of Gilbert Rose, had ravished her. She detailed the circumstances attending the commission of the crime as follows:

Q. Did this Richard Rose that is being tried for abusing you, did he ever mistreat you?

A. Yes.

Q. Where was it that he did that?

A. In the garden.

Q. Where was Mrs. Rose?

A. She was at Gilbert's daddy's, George Rose.

Q. Where was Gilbert?

A. He was there, too.

Q. What time in the day was it?

A. About twelve o'clock, somewhere along there.

Q. What were you doing in the garden?

A. Hoeing tomatoes.

Q. Were you by yourself?

A. Yes.

Q. What did he do to you?

A. He grabbed me and threw me down.

Q. Did he get between your legs?

A. Yes.

Q. Did you see it?

A. Yes, I did.

Q. Did he place his privates in you?

A. He tried to.

Q. Did he do that?

A. I don't know.

Q. Did he get that into you?

A. I don't know.

Q. Did he hurt you?

A. A little bit.

Q. How long did he stay on you?

A. I don't know.

Q. Was it a good little bit?

A. Yes.

Q. What were you doing; did you cry out or anything?

A. Yes.

Q. Did you try to get him to quit?

A. Yes.

Q. Did you know he was doing wrong?

A. Yes.

Q. Did he hold you?

A. Yes.

Q. Were you hurting when you got up?

A. Yes, a little.

Q. Did he say anything to you?

A. No.

Q. Told Mrs. Rose about it?

A. Yes.

Q. At the time this occurred in the garden it was between 12 and 1 o'clock?

A. Yes.

Q. Was it before dinner?

A. No.

Q. Who eat dinner with you?

A. The home folks eat with me.

Q. Who were they?

A. Gilbert and his wife.

Q. How far is it from there to his father's?

A. A quarter I guess.

Q. How long you say it was after you eat until this occurred in the garden.

A. Well, sir; I can't tell.

Q. How far was it from the garden to the house?

A. Right in front of the house.

When the prosecuting witness was carried back to the Orphan's Home, the superintendent had her examined by two physicians. They testified that they found the hymen gone which indicated that she had had sexual intercourse. That the hymen was hanging in shreds. That copulation would cause this; but that it might be destroyed by other objects penetrating it. That if the intercourse had been had against her will it was possible that she could have gotten up and gone to work at once, but that it was highly improbable.

On cross-examination, the prosecuting witness admitted that she had testified that she was only twelve years old when the offense was committed. There was other evidence to show that she was fourteen years old.

Other physicians testified that under the circumstances detailed by the prosecuting witness it was highly improbable that she could have gotten up at once and gone to work. There was also evidence that Richard Rose got out a license to marry the prosecuting witness and in his application stated his own age at eighteen years and her age at fifteen years.

The defendant, Richard Rose, denied that he assaulted Maggie Moreland and denied that he.had sexual intercourse with her. He admitted that he became engaged to marry her while at his brother's house, and that they became engaged the first time he talked to

her there. Evidence was also adduced by the defendant tending to show that the prosecuting witness had had sexual intercourse with another man. That Mrs. Gilbert Rose was sick on the day of the alleged assault and that defendant did not have intercourse with the prosecuting witness while she was at the home of Gilbert Rose. The prosecuting witness denied that she had had sexual intercourse with any other man.

(2) It is earnestly insisted that the evidence does not support the verdict. Counsel for the defendant point out that leading questions were asked the prosecuting witness. That it was highly improbable that the prosecuting witness could have gone to work at once if the intercourse had been under the circumstances testified to by her. It is true all the physicians testified to this fact. Counsel also point to the fact that the prosecuting witness first testified that the intercourse was had on a certain day and that several witnesses testified that Mrs. Rose was at home sick on that day, and that it was not possible that the intercourse could have been had and outcry made by the prosecuting witness without Mrs. Rose having heard her. That the prosecuting witness then wavered in her testimony and said she did not remember on what day the intercourse was had with her. All these matters, however, only went to the credibility of the witness. The jury was the sole judge of the credibility of the witnesses and the weight to be given to their testimony. They were not required to accept or reject in toto the testimony of the witness. It was their duty to accept that portion of the testimony of any witness they believed to be true and reject that part they believed to be false. Therefore the jury might have believed, and by its verdict shows that it did believe, that the prosecuting witness yielded to the defendant, and that he was only guilty of carnal abuse. The undisputed evidence shows that she was under sixteen years. The physicians say that the hymen was ruptured and that sexual intercourse caused this. True they said it could be caused by other means but here again it was the province of the

jury to weigh the evidence. The defendant admitted
that he procured license to marry the prosecuting witness
and that this was done after the alleged assault. He
said that he became engaged to her within an hour after
he first met her. The jury might have believed that he
intended to marry her to avoid this prosecution. But
it is not within our province to say where the weight
of the evidence was. That was peculiarly within the
province of the jury. The evidence was sufficient to
support the verdict; and the contention of counsel for
defendant on this point must be denied.

(3) The next inquiry is whether or not the judg-
ment should be reversed on account of certain remarks
made by the prosecuting attorney.

The record declares that in his closing arguments
the prosecuting attorney stated, "That the State had
authority to prove by introducing letters from parties
who lived near the Roses, where the manager of the
Orphan's Home got his information, why Maggie More-
land was recalled from the Roses and who informed the
manager of the Orphan's Home about how she had been
mistreated by the Roses, what caused him to have her
examined by physicians after she had denied that she had
been mistreated, but that the defendant objected to said
evidence and by objecting to said evidence closed the
mouth of the State and prevented it from proving these
facts."          .

This argument of the prosecuting attorney was made
in reply to a statement in the argument of the attorneys
for appellant as follows:

"That there was not any evidence in the record to
show how the manager of the Orphan's Home learned
that Maggie Moreland had been mistreated by the Roses,
or why he sent for her or where he received the infor-
mation that she had been mistreated by the Roses and
had her examined by the physicians, and no one stated
where it was obtained."

The argument of the prosecuting attorney was pro-
voked by the remarks made by counsel for appellant.

Improper arguments can not be complained of if it is necessitated by what was said by the argument of an adversary. In such cases the error complained of is invited and it is well settled in this State that a judgment will not be reversed for invited error.

In the case of *Ferguson & Wheeler* v. *Good,* 112 Ark. 267, we said, "Argument of counsel for plaintiff explaining why certain witnesses were not called is not prejudicial when made in answer to argument of defendant's counsel, making charges as to why said witness had not been called." See, also, *St. L., I. M. & S. Ry. Co.* v. *Leflar,* 104 Ark. 528.

We have carefully examined the record and find no prejudicial error in it. Therefore the judgment will be affirmed.