SINGER v. STATE.

Crim. 4073.

Opinion delivered January 17, 1938.

346

*Floyd Terral,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

McHANEY, J. Appellant was charged by information, tried, convicted of embezzlement and sentenced to one year in the penitentiary.

The charge and conviction grew out of these facts: Appellant advertised for a truck driver and one Paul E. Pollock answered the advertisement, which resulted in his employment under the following written contract:

"This agreement made and entered into this 15th day of October, 1935, by and between Paul E. Pollock, party of the first part, and Mike Singer, 1512 Spring street, Little Rock, Arkansas, party of the second part, witnesseth:

"Party of the first part agrees to deposit two hundred and no/100 dollars ($200) in cash with Mike Singer for security of cash money entrusted to him and also to cover accidents or loss of tools, equipment, etc., through his negligence.

"Party of the second part agrees to pay party of the first part eighteen and no/100 dollars ($18) per week for six (6) trips to the mines and back for coal or work locally.

"Party of the first part agrees to take care of the trucks mechanically and make all necessary minor repairs.

"Party of the second part also agrees that if something happens on the road to the truck that the driver cannot repair himself, party of the second part will pay all labor at his own expense.

"Party of the second part agrees that should there be a business reverse or should party of first part prove unsatisfactory, he will have the privilege of discharging him and after two weeks' notice will reimburse party of the first part his two hundred dollar deposit.

"Party of the first part is at liberty, if it is his desire to discontinue his services, to give party of the second part two weeks' notice so he may employ another driver and reimburse party of first part his deposit money."

The cash bond requirement was complied with, although Pollock and his father tried to get appellant to accept a property bond, which was refused. Pollock went to work and during the second week of his employment he was required to take the truck to Waterloo, about 18 miles out of Prescott, Arkansas, to get a load of roofing material. He and a negro left the home of appellant with the truck about 2 a. m. on the trip to Waterloo, stopped at a filling station where they met appellant, secured a supply of gasoline and left about 2:30 a. m. He had checked the equipment of the truck the evening before and there were two extra tires and wheels in it. It was checked again by appellant at the filling station, and the two tires were said by him to be in the truck. Pollock and the negro proceeded on their way, but some distance out of Little Rock they saw a 'possum in the road and stopped to catch it. They then stopped at a filling station to get a sack to put it in, when they discovered they had only one extra tire in the truck. They then returned to Little Rock, and, after daylight, started out again to go to Waterloo, and looked along the road for the missing tire, which was not found. They arrived in Waterloo about 1 p. m., after stopping at some place for lunch and for a game of pool by Pollock. It was raining at that time and Pollock called appellant on the telephone and advised him of conditions and the manager of the roofing plant also talked to appellant. They completed loading the truck about 6 p. m., and Pollock says it was loaded beyond capacity—too much roofing on it. They left Waterloo with Pollock driving, but a short distance out he turned the driving over to the negro, who, just out of Prescott, in attempting to pass another car, drove off the

road, stalled the truck and, in attempting to get it out, stripped the gear and disabled the truck. Pollock went in to Prescott, notified appellant of his dilemma, and was told to get the truck repaired by a certain mechanic. Pollock went back to Little Rock and appellant would not permit him to work longer, until he paid for the loss of the tire and damages done to the truck, which he claimed to be in excess of the cash bond of $200 deposited with him. It is this $200 that appellant is convicted of embezzling.

Appellant testified that he told Pollock over the telephone to bring only one-half load of roofing, in view of the rainy weather and the unpaved condition of the road from Waterloo to Prescott. While appellant was testifying about the damages he had sustained and giving a list of same, including damage done to his truck, the court gave the following instruction: "Gentlemen, I am going to instruct you here, the defendant cannot charge back, has no right under this contract, anything to the prosecuting witness other than expenses caused by the negligence of the prosecuting witness. Repairs necessitated by reason of overloading or which were necessitated by other causes other than negligence on the part of the prosecuting witness are not chargeable to him. Minor repairs which the average automobile mechanic or truck driver could fix were to be fixed by the prosecuting witness. Those repairs necessitating a garage mechanic, caused by hazards on the road, are not chargeable to the prosecuting witness. The contract is written by the defendant and he is bound by its terms, and it is to be construed more strongly against him."

We think the court committed error in this instruction in two instances. First, in telling the jury that "repairs necessitated by reason of overloading or by other causes other than negligence on the part of the prosecuting witness are not chargeable to him"; and, second, that "the contract is written by the defendant and he is bound by its terms, and it is to be construed more strongly against him."

It must be borne in mind that appellant was being tried on a felony charge and that the burden was on the

state to prove him guilty beyond a reasonable doubt. If Pollock had not stopped on the road to catch 'possums, eat lunch, play pool, and otherwise kill time, the undisputed evidence shows he should have been in Waterloo by 7 a. m., gotten his load of roofing, and been on his way back to Little Rock before it started to rain at about 10:30 a. m. We think appellant's testimony that he told Pollock to bring only one-half the load he intended him to bring, and not to overload the truck under the conditions then existing, due to Pollock's gross negligence in not proceeding to do the work assigned him in an orderly and prompt way, was competent as going to the intent or good faith of appellant in retaining the $200 on deposit with him. The contract provides that the sum deposited is "to cover accidents . . . through his negligence." If appellant actually and in good faith believed the deposit covered the damage to his truck caused by its being overloaded by Pollock against his directions, then he would not be guilty of embezzlement in refusing to pay it to Pollock. We think it was a question for the jury to determine his good faith, and not the court, as the jury is the judge of credibility of the witness and the weight, effect and value of his testimony. Then, too, we think the court went too far in the concluding sentence in the instruction above quoted. Aside from the fact that there is no proof that the contract was written by appellant, he is only bound by its terms in this prosecution as he honestly and in good faith understood them, and this, also, is for the jury's determination.

Another assignment of error argued relates to the testimony of one Crawford that he had also put up $200 with appellant under similar circumstances to that of Pollock, and that he had experienced a lot of trouble in getting his money back, going to the extent of having him indicted, and that appellant had paid him back after indictment at the rate of $20 per month. In fact, two other witnesses also testified to similar experiences with appellant. We think this testimony was properly admitted as it tended to show a general scheme, plan or course of dealing. 9 R. C. L., § 41, p. 1295. *Larkin* v. *State*, 131

Ark. 445, 199 S. W. 382; *Puckett* v. *State,* 194 Ark. 449, 108 S. W. 2d 468.

Nor do we think error was committed in other assignments argued, that relating to testimony of the civil judgment obtained by default in another court, and that the evidence is not sufficient to support the verdict and judgment.

For the error indicated, the judgment is reversed, and the cause remanded for a new trial.