Frank Allen CATON and Bernie Hudson HEADLEY
v. STATE of Arkasas

5659                                        479 S.W. 2d 537

Opinion delivered May 1, 1972

*Wiggins & Christian,* for appellants.

*Ray Thornton,* Atty. Gen., by: *Milton Lueken,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellants were convicted of grand larceny of merchandise of the value of more than $35 from the K Mart Shopping Center in Ft. Smith. Their appeal is based upon allegations that there was error in the admission into evidence of a stenographer's notebook seized by police from an automobile owned by appellant Headley, in denying their requested instruction on the crime of shoplifting defined by Ark. Stat. Ann. § 41-3939 (Repl. 1964) and in failing to direct a verdict for appellant Headley.

George Alonzo, a security guard at K Mart saw two females taking merchandise from a pants suit rack in the ladies' wear department and putting it first on another rack and then in their purses. He saw them take in this manner at least four items of merchandise, one of which was yellow. This department was near the refund

desk. He watched them and saw that they did not leave the store from this department but went into the patio department. He came downstairs and went to the patio department. While he was doing this he lost sight of the women for about 10 seconds, but said that it would not have been possible for them to have paid for the merchandise in that interval. When he saw them again, they were entering a 1/2-ton pickup truck, which was in motion. He was positive that he saw one of these women behind the steering wheel and at least one other woman whom he could not then recognize. He could not tell how many passengers were in the truck cab. The truck proceeded from one side of the shopping center parking lot to the other, moving in what Alonzo described as an "S", and coming back and stopping in the lot near the food department at the opposite end of the building from the patio area. Alonzo was walking along the sidewalk, keeping the truck under surveillance. He picked up the chief security guard, identified as Mr. Smith, as he passed the front door. Together they proceeded to a point near that where the truck had been parked and saw a man, later identified as Frank Caton, get out of the truck and carry a brown paper bag, containing at least two colored items, toward the entrance to the food department. Alonzo saw Caton enter the food department, turn to his left, and proceed toward the area where the refund desk was located. Alonzo and Smith approached the truck, and Smith went to the driver's side and Alonzo to the other side. Alonzo opened the door, identified himself and asked the female occupants if they minded coming inside to discuss the merchandise they might have forgotten to pay for. He said that the two young ladies he had seen in the store, an elderly lady and a child were then in the truck. The woman denied having been in the store, and one of them threatened to call the police. Alonzo saw the top half of a yellow pants suit on the floorboard, along with some brown paper bags. He picked it up and noticed that it bore a two-part K Mart ticket. He said that this indicated that the item had not been paid for, since one portion was to be removed by the store employee to whom payment was made. The driver of the truck started it and left the area. As the truck was leaving Smith wrote down the vehicle license number—Ala ZP16799. Alonzo

and Smith then went through the food department to the service desk, from which Smith called the police. Alonzo found Caton at the refund desk, attempting to negotiate with the clerk there for an exchange or refund on a pants suit and a dress. Alonzo asked Caton for a sales receipt for the merchandise and for identification. Caton produced an Alabama driver's license issued to B. H. Headley. Upon inquiry by Alonzo, Caton stated that he lived on Route 2, Ft. Smith, that his wife was at home, that she was blond and that she was not one of the ladies Alonzo had seen in the pickup truck. Caton kept insisting that he was in a hurry to get to the automotive department where he said his car was being repaired, and asked if he was under arrest. When Alonzo replied in the negative, Caton left through the front door, and when Alonzo called to him and asked if he wanted to take the merchandise, Caton replied that he thought he would sue the store for harassment or false arrest. Alonzo called the auto department and found that one B. H. Headley had a car there, and obtained the make and license number. Alonzo then called the police.

An employee in the K Mart automotive center had sold some tires to Headley, who said that he was from Alabama. Headley was accompanied by Caton at the time of the purchase, and both stood out by the car and waited for the tires to be mounted on Headley's 1966 Rambler automobile. A little later both left, but returned to ask if the car was ready. At the time, the wheels were being balanced. Caton paid for the tires and certain work being done on the car.

Charles Hill, a Ft. Smith uniformed police patrolman, received two calls pertaining to these incidents, and went to the shopping center where he made contact with the security guard. They went to the automotive department and found Caton standing near the car which had been described. Hill asked if Caton were the owner. Caton said he was not but that the owner was inside. Headley then walked out and admitted that the car was his, but denied having a driver's license when asked for identification, stating that Caton was doing the driving. He did display a registration certificate bearing

his name and the same license number as that given Officer Hill as displayed on the pickup truck. When Hill stated that this was not the registration certificate for the car, Headley stated that it was for his truck, and said that his wife and another lady had gone in it to get something to eat. He said they might return or might go to Alabama, but did not know the route they would travel, where they would spend the night or where he would meet them. Headley then asked Caton to walk around the building and see if the vehicle was there. Caton asked "Which one?" and Headley told him the pickup truck. Caton walked to the corner of the store, looked into the parking lot and reported that the vehicle wasn't there. During the conversation among Hill, Headley and Caton, Headley told the officer that the party had spent the previous night in Oklahoma City, arrived in Ft. Smith that afternoon and had come to K Mart to buy tires. He said that he had no relatives in Oklahoma City and that the party was just on a tour. He said that they had not been to any place in Ft. Smith except the K Mart center.

O. A. Davis, a police detective, who had been called by Hill, came to the automotive center and placed Headley and Caton under arrest. He searched their vehicle at the time but did not see a stenographic notebook which was handed to him a few minutes later by Officer Jones, whom Davis had directed to drive the Rambler to police headquarters. Davis saw Jones when he found the notebook in the front seat of the car.

Appellants requested an instruction which would have advised the jury of the definition of the crime of shoplifting contained in Ark. Stat. Ann. § 41-3939 and permitted the jury to convict them of that offense which is a misdemeanor on the first or second conviction and a felony on the third conviction. They contend that shoplifting is a lesser offense included within the charge of grand larceny made against them, and that the circuit judge was bound to give this instruction.

The information charges that appellants committed the crime of grand larceny in the following manner:

The said defendants, in the County, District and State aforesaid, on the 26 day of February, 1971, did unlawfully and feloniously steal, take and carry away merchandise of more than $35.00 in value the property of K Mart Shopping Center with the unlawful and felonious intent to convert the same to their own use and deprive the owner thereof.

The pertinent portion of the shoplifting statute reads:

Any person who shall willfully take possession of any goods, wares or merchandise offered for sale by any store or other mercantile establishment with the intention of converting the same to his own use without paying the purchase price thereof, shall be guilty of the offense of shoplifting and shall be punished by a fine of not less than Twenty-Five ($25.00) Dollars and not more than Fifty ($50.00) Dollars and or imprisonment of not less than five [5] days and not more than thirty [30] days, or both for the first offense.

This court has zealously protected the right of an accused to have the jury instructed on lesser offenses included in a greater offense charged. We have consistently held that a trial court commits reversible error when it refuses to give a correct instruction defining a lesser included offense and its punishment when there is testimony on which the defendant might be found guilty of the lesser rather than the greater offense. *Walker v. State,* 239 Ark. 172, 388 S.W. 2d 13; *Bailey v. State,* 206 Ark. 121, 173 S.W. 2d 1010; *Smith v. State,* 150 Ark. 193, 233 S.W. 1081; *Allison v. State,* 74 Ark. 444, 86 S.W. 409; *Davis v. State,* 72 Ark. 569, 82 S.W. 167. We have been so careful to see that a jury has an opportunity to pass upon lesser offenses as well as the greater one charged that we have held that it is not prejudicial error to give an instruction which permits the jury to find a defendant guilty of a lower offense than that charged, even when the defendant objects, because the evidence shows him to be guilty of the higher offense or of nothing at all. *Kurck v. State,* 235 Ark. 688, 362 S.W. 2d 713, cert. denied, 373 U.S. 910, 83 S. Ct. 1299, 10 L. Ed. 2d 412.

Still, it is not error for the court to fail to instruct on the lower offense, where the evidence clearly shows that the defendant is either guilty of the greater offense charged or innocent. *Gilchrist v. State,* 241 Ark. 561, 409 S.W. 2d 329; *Sims v. State,* 203 Ark. 976, 159 S.W. 2d 753; *Clark v. State,* 169 Ark. 717, 276 S.W. 849; *Rogers v. State,* 136 Ark. 161, 206 S.W. 152. And we have held that where the higher offense charged included a lower offense and there was evidence sufficient to present a question of fact as to the defendant's guilt of either, the trial judge's instruction over defendant's objection, that the defendant could not under the testimony be convicted of a lower offense than that charged in the indictment, was reversible error. *Bryant v. State,* 41 Ark. 359.

The question whether the denial of appellants' requested instruction was error turns on whether shoplifting prohibited by Ark. Stat. Ann. § 41-3939 is a lesser offense included in the crime charged here and whether there was evidence to support a conviction of the former offense.

Recently we said that to be an included offense, all the elements of the lesser offense must be contained in the greater offense—the greater containing certain elements not contained in the lesser. *Gaskin v. State,* 244 Ark. 541, 426 S.W. 2d 407. However, this general statement of the principle does not provide the test we have heretofore utilized. An accused may be convicted of a lesser offense than that charged when both belong to the same generic class, the commission of the higher offense may involve the commission of the lower, and the charge of the higher contains all the substantive allegations necessary to let in proof of the lesser. *Cameron v. State,* 13 Ark. 712.[1] (Assault with intent to kill and simple assault.)

---

[1]This case or the rule stated by it was followed in *Strawn v. State,* 14 Ark. 549, where the charge was maiming and conviction was of fighting by mutual agreement (resulting in maiming) which constituted aggravated affray under a statute, and in *Guest v. State,* 19 Ark. 405, where the charge was maiming and the accused was found guilty of an aggravated assault and battery; *Monk v. State,* 105 Ark. 12, 150 S.W. 133, where defendant was convicted of

If the evidence proves insufficient to support a jury's verdict of guilt of the higher offense, the court may sentence the defendant for the lesser offense where the evidence clearly shows the commission of the latter, and this court, in its discretion, may reduce the sentence to that prescribed for the lesser offense. *Routt* v. *State,* 61 Ark. 594, 34 S.W. 262; *Noble* v. *State,* 75 Ark. 246, 87 S.W. 120; *Trotter* v. *State,* 148 Ark. 466, 231 S.W. 177; *Blake* v. *State,* 186 Ark. 77, 52 S.W. 2d 644; *Roberson* v. *State,* 109 Ark. 420, 160 S.W. 214; *Phillips* v. *State,* 190 Ark. 1004, 82 S.W. 2d 836; *Sharpensteen* v. *State,* 220 Ark. 839, 250 S.W. 2d 334; *Green* v. *State,* 230 Ark. 1007, 328 S.W. 2d 89. Furthermore, we have held that even though the offense of which the accused was found guilty was not a lesser included offense of that charged, there was no error in his conviction if the punishment imposed was one which could have been imposed for a lesser included offense, if the evidence showed, and the jury must necessarily have found, the defendant to have been guilty of that offense in arriving at its verdict. *Crank* v. *State,* 165 Ark. 417, 264 S.W. 936.

An additional requirement is that the evidence must show that the lesser offense was committed. *Davis* v. *State,* 45 Ark. 464. See also, *Jacobs* v. *State,* 100 Ark. 591, 141 S.W. 489. And the jury may convict of the lower, if it entertains a reasonable doubt as to which of the two offenses a defendant is guilty. *Haley* v. *State,* 49 Ark. 147, 4 S.W. 746. See also, *Powell* v. *State,* 149 Ark. 311, 232 S.W. 429.

Not only is it necessary that the offenses be of the same generic class and that the commission of the higher offense may involve commission of the lower, the charge must also contain all the substantive allegations necessary to let in proof of all the elements of the latter. *Childs* v. *State,* 15 Ark. 204; *Quinn* v. *State,* 114 Ark. 201,

---

burglary and petit larceny on a charge of burglary and grand larceny. *Hight* v. *State,* 172 Ark. 240, 288 S.W. 384, where the charge was robbery and the conviction was for assault with intent to rob; *Harrison* v. *State,* 222 Ark. 773, 262 S.W. 2d 907, where conviction was assault with intent to rape and the charge was rape.

169 S.W. 791; *Sharpensteen* v. *State,* supra. In *Childs,* the defendant and three others were charged "with force and arms, being assembled together and arrayed in a warlike manner," making an affray in a public highway by fighting to the terror and disturbance of the people. While it was held that the essential ingredient of the crime was its commission in a public place, making it an aggravated disturbance of the public peace and the charge would permit conviction of all participants of the crime of assault, if the evidence fell short of proving the higher offense, a conviction of assault and battery was reversed because the indictment did not contain the substantive allegations of identity of persons injured necessary to sufficiently inform the defendant of the accusation and identify it sufficiently to protect him from further prosecution for the same offense. So, it was later held, one charged with affray could properly be convicted of assault and battery or assault if the indictment included allegations of an assault and battery. *State* v. *Brewer,* 33 Ark. 176.

One charged with assault with intent to kill or assault with intent to rape may not be convicted of assault and battery, unless the indictment or information charges a battery in the allegations of the charge of assault with intent to kill. *Sweeden* v. *State,* 19 Ark. 205; *Jones* v. *State,* 100 Ark. 195, 139 S.W. 1126; *Crank* v. *State,* 165 Ark. 417, 264 S.W. 936. So in *Quinn* v. *State,* supra, it was held that conviction of aggravated assault was permissible on an indictment for assault with intent to kill which contained allegations sufficient to embrace all essentials of the lesser offense.

It is clear that, generally speaking, conviction of a lesser included offense is a bar to prosecution of one convicted for the greater. *State* v. *Nichols,* 38 Ark. 550, Actually, acquittal or conviction of either would bar prosecution for the other. *Haley* v. *State,* 49 Ark. 147, 4 S.W. 746; *Fox* v. *State,* 50 Ark. 528, 8 S.W. 836 (conviction of robbery barred prosecution for false imprisonment, where the same assault was alleged as an ingredient of both offenses); *State* v. *Smith,* 53 Ark. 24, 13 S.W. 391 (conviction of petit larceny bars robbery pro-

secution); *State* v. *Lismore,* 94 Ark. 211, 126 S.W. 855, 29 L.R.A. (n.s.) 721. It is equally clear that conviction of the greater offense bars prosecution for the lesser. *Sullivan* v. *State,* 131 Ark. 107, 198 S.W. 518.

Where the indictment for a greater offense does not contain allegations of all the ingredients of the lesser offense, a conviction of the lesser cannot be sustained, even though the evidence may supply the missing element. Thus, a conviction of carnal abuse was reversed when the indictment for rape contained no allegation indicating that the victim was under the age of puberty (then 12 years). *Warner* v. *State,* 54 Ark. 660, 17 S.W. 6. On the other hand, carnal abuse convictions on rape charges have been sustained, where the required allegations as to age were included in the charge. *Sutton* v. *State,* 197 Ark. 686, 122 S.W. 2d 617; *Head* v. *State,* 175 Ark. 64, 297 S.W. 828; *Rose* v. *State,* 122 Ark. 509, 184 S.W. 60; *Threet* v. *State,* 110 Ark. 152, 161 S.W. 139; *Peters* v. *State,* 103 Ark. 119, 146 S.W. 491; *Henson* v. *State,* 76 Ark. 267, 88 S.W. 965.

The state has the option, however, to ignore the higher offense and to charge and seek conviction of the lesser, and it is not error, in that event, for the court to refuse defendant's request that the jury be instructed that a conviction of the lesser offense could not be had if the evidence showed that the greater offense had been committed, but it would be error for the court to give such an instruction. *Cook* v. *State,* 130 Ark. 90, 196 S.W. 922.

Unless the lower offense is *necessarily* included within the higher, there is no reason why the prosecuting attorney or the grand jury should not have the option of charging the more serious offense and ignoring the lesser. Courts in other jurisdictions have held that allowing such discretion where a shoplifting statute is involved is not constitutionally objectionable. *Black* v. *Gladden,* 237 Or. 631, 393 P. 2d 190 (1964); *Yearwood* v. *State,* 455 S.W. 2d 612 (Tenn. Cr. App. 1970).[2]

---

[2]We do not approve the holding in these cases that there cannot be a con-

In this case, there was no reversible error because the allegations in the information do not charge that the merchandise taken was offered for sale by a store or other mercantile establishment. The fact that the state was not required to allege the particular act or acts constituting the offense it charged does not affect the result in this case, because it did set out these acts, as it might have been required to do upon request of appellants. Ark. Stat. Ann. §§ 43-1006, 43-804 (Repl. 1964); *Smith* v. *State,* 231 Ark. 235, 330 S.W. 2d 58; *Edens* v. *State,* 235 Ark. 996, 363 S.W. 2d 923. Whenever the information contains all the requirements of the former statute to constitute a sufficient indictment by a grand jury, it is treated as if the state had set out the details of the acts relied upon for a conviction in response to a motion for a bill of particulars. *Bosnick* v. *State,* 248 Ark. 846, 454 S.W. 2d 311; *Brockelhurst,* v. *State,* 195 Ark. 67, 111 S.W. 2d 527.

The most difficult question presented is appellants' contention that the stenographic notebook was erroneously admitted into evidence over their objection. They made a motion to suppress this evidence. The written motion to suppress was based upon allegations that the notebook was the product of an unlawful search and seizure. This objection has not been argued on appeal. Appellants do argue that the notebook was inadmissible because the proper foundation was not laid for its introduction, because it contained hearsay and because the entries were too remote in time to be relevant, material or competent. The objections as to hearsay and lack of foundation or connection with appellants were made and overruled when the notebook was offered in evidence at the trial. The circuit judge instructed the jury that this evidence was to be considered by it only for the purpose of showing motive, design, particular criminal intent, habits and practices, or good or bad faith of appellants on the occasion on which the charge was based, if the jury found it to be evidence of similar activities on the part of the

---

viction of shoplifting on trial of a charge of grand larceny. It is not necessary for us to reach that question in this case. Under our tests, it appears that such a conviction might be possible if the charge alleges all the elements of shoplifting and the evidence would support such a conviction.

defendants. The court instructed the jury, in effect, that it was its duty to determine whether a conspiracy existed, as the state contended, and if it did, that the statements and conduct of each of the participants during the existence of the conspiracy or later, if in furtherance of an attempt to escape or to conceal the crime, could be considered.

The notebook might well be taken as a ledger of shoplifting activities. It lists on the left-hand side, under a heading entitled "Paid out," various amounts for items such as gas, room, food, car wash, car and rent. On the right-hand side the heading on the first sheet is "Took in." In this column there are numerous amounts in dollars and cents opposite such designations as "Woolco," "Penney's," "Globe," "Sears," "West," "Gibson's," "Ward," "K Mark," "Spartan," "Boston," "Hunt's," "Levine's," "Oertle's," "Target," "Grant's." Above each series of figures a date and place are written. The dates range from July 7, 1970, to August 28, apparently of the same year. In some instances the day of the week and hour of the day are also noted. On July 7 the place was Shreveport; July 8, Texarkana, Arkansas and Texas, Hot Springs and Little Rock; August 11, Little Rock; August 12, Ft. Smith; August 13, Muskogee, Oklahoma; August 14 and 15, Oklahoma City, Tulsa and Muskogee; August 20, Anniston, August 21, Greenville and Spartanburg, South Carolina; August 22, Asheville, North Carolina; August 25, Winston Salem, Greensboro and Burlington; August 26, Durham, North Carolina and Petersburg, Virginia; August 27, Richmond and Charlottesville, North Carolina; and August 28, Roanoke, Virginia and Bristol. Opposite the name of one store is the notation "Sp. coat 55.00 To mail check." Opposite others are such notations as "Run out," "Run out of town," "No refund," "No dice," "No dice—swap out," "No dice at all," "No dice/even exchange," "No dice no exchange," "Even swap only," "No refund no exchange," "No merchandise," "Jack and Jean run out of town," "Watched," "No-no-no," "Caught in lot," and "Kept pants." The initials F.A. appear alongside a few of these notations. Opposite the name K Mart under the heading "Ft. Smith,

Arkansas, Wednesday August 12, 1970," the figures "10.00" appear. A total of "89.00" is shown for that date. There is no evidence to show in whose handwriting the entries were made, and the only connection of any of the parties disclosed in the exhibit is the first two initials of Caton's name.

The objection for remoteness cannot be considered, because it was first made in appellant's motion for new trial, and only inferentially argued here. We may say, however, that the trial court has some discretion in determining whether the conduct relating to other offenses is too remote in time to justify admission, when otherwise admissible. *Wilson* v. *State,* 184 Ark. 119, 41 S.W. 2d 764; *DuVal* v. *State,* 171 Ark. 68, 283 S.W. 23. We cannot say that there was an abuse of discretion on this ground. The offense was alleged to have occurred within six months of the date of the last entry in the notebook.

Where there is a question whether the crime charged was by accident or mistake, or intentional and with bad motive and guilty knowledge, evidence of similar acts under similar circumstances is admissible, over an objection that a proper foundation was not laid, as tending to show a system, design and guilty knowledge in the case on trial. *Howard* v. *State,* 72 Ark. 586, 82 S.W. 196. See *Moore* v. *State,* 227 Ark. 544, 299 S.W. 2d 838. This exception to the general rule against admission of evidence of other offenses is applicable to larceny cases as well as others. *Johnson* v. *State,* 75 Ark. 427, 88 S.W. 905; *Hall* v. *State,* 161 Ark. 453, 257 S.W. 61.

We held that, in a prosecution for embezzlement by an employer of funds deposited by an employee as security, evidence of similar conduct in regard to other deposits was admissible to show a general scheme, plan or course of dealing. *Singer* v. *State,* 195 Ark. 345, 112 S.W. 2d 426. We also held that evidence of the defendant's passing of checks other than the one on which a forgery charge was based was permissible as tending to show the method of procedure employed by the defendant to defraud. *Walker* v. *State,* 171 Ark. 375, 284 S.W. 36. Evi-

dence tending to show an operation of a general plan to deal in stolen goods was held admissible in *Long* v. *State,* 192 Ark. 1089, 97 S.W. 2d 67. See also, *Barnhardt* v. *State,* 169 Ark. 567, 275 S.W. 909. Evidence tending to prove the character of business in which a defendant was engaged at the time he is charged with having committed an offense and his intention to engage in the illegal business with which he was charged has been held admissible in a trial on a charge of manufacturing intoxicating liquors in *Casteel* v. *State,* 151 Ark. 69, 235 S.W. 386, and of possessing a still in *McGuffin* v. *State,* 156 Ark. 392, 246 S.W. 478. See also, *Lynn* v. *State,* 169 Ark. 880, 277 S.W. 19; and see *Boyle* v. *State,* 110 Ark. 318, 161 S.W. 1049, where the charge was pandering.

Testimony of this nature concerning statements of the accused made about a year prior to the offense charged has been held admissible. *Brown* v. *State,* 161 Ark. 253, 255 S.W. 878. On the other hand, evidence of such conduct several years before the occurrence on which the charge was based has been held inadmissible. *DuVal* v. *State,* 171 Ark. 68, 283 S.W. 23. On a charge of forgery and uttering a forged instrument evidence pertaining to checks bearing dates ranging over a period of more than two years held admissible to show guilty knowledge and criminal intent, because it tended to show a plan or system of operation. *Wilson* v. *State,* 184 Ark. 119, 41 S.W. 2d 764. In a case where a male defendant was charged with fondling a male child, evidence of an occurrence which took place four or five years earlier was held not too remote to be admissible as evidence of the defendant's proclivity to indulge in unnatural sex acts. *Ward* v. *State,* 236 Ark. 878, 370 S.W. 2d 425. The trial court's latitude of discretion in the matter of remoteness is illustrated in these cases.

Evidence of such similar acts by a defendant and his co-conspirators is admissible. *Johnson* v. *State,* 75 Ark. 427, 88 S.W. 905. Evidence of similar acts connected with the specific offense on trial as part of a general and composite scheme, or so related as to show a common motive or intent throughout has been held admissible to show that the crime charged was within the scope of the

purpose for which it is alleged that the defendant had conspired with another. *State* v. *Dulaney,* 87 Ark. 17, 112 S.W. 158.

Since the court admonished the jury that the exhibit could be considered only if found by it to be evidence of activities of appellants similar to that charged in the information, a critical question is whether there was sufficient authentication of the notebook to permit introduction under any circumstances. We do not feel that the finding of this notebook, with initials identical to Caton's first two in a few places, in the automobile owned by Headley and driven by Caton to the shopping center is sufficient circumstantial evidence to justify submitting to the jury the question of authenticity of the writing and its connection with the defendants, as was done in *Monk* v. *State,* 105 Ark. 12, 150 S.W. 133.

Admissibility of this incriminating bit of evidence cannot be sustained upon the theory that the entries were made by an accomplice or coconspirator of appellants. We think that there was ample evidence on which the jury might have based a finding that Headley, his wife, Caton and at least one other female had conspired to engage in the shoplifting at the K Mart in Ft. Smith. The notebook was found in a vehicle owned by Headley and driven to the site by Caton, and the alleged participants were all traveling together, although in two vehicles, both owned by Headley. The inference that Caton, with Headley's driver's license in his possession, left Headley to meet the female shoplifters and to convert the stolen merchandise into cash was reasonable. It would not be unreasonable to infer that Headley's vehicle was to be used to get the women away from the scene of the crime with his knowledge.

A conspiracy is a combination between two or more persons to do something unlawful, and it may be established by circumstantial evidence as well as by direct evidence. *McGlosson* v. *State,* 171 Ark. 1188, 286 S.W. 931; *Griffin* v. *State,* 248 Ark. 1223, 455 S.W. 2d 882. Where the testimony shows a concert of action between persons alleged to have jointly committed a crime or the

person charged and another, it has been held sufficient to establish the necessary common unlawful object and intent. *Griffin* v. *State*, supra. When the combination of persons to do an unlawful act is shown, each of them is liable for the act of one proceeding according to the common plan, if it terminates in a criminal result. *Griffin* v. *State*, supra. If Headley and Caton were participants in the conspiracy, evidence of any statement made by, or conduct of, any of the participants, prior to the completion of the fraudulent scheme, was admissible against them. *Parker* v. *State*, 98 Ark. 575, 137 S.W. 253; *Housley* v. *State*, 143 Ark. 425, 220 S.W. 460. The evidence was sufficient to make both Headley and Caton accessories, if not principals in fact as well as in law. This exhibit would be competent against an accessory if it was competent against a principal. *State* v. *Dulaney*, 87 Ark. 17, 112 S.W. 158.

The first fallacy in this theory of admissibility is that this notebook, a "speaking exhibit," clearly violates the hearsay rule in the absence of evidence that any participant in the crime charged, or in a conspiracy to commit it, made the entries. Thus, the notebook would be inadmissible under this theory because there is no evidence to connect the content of the notebook with the particular crime charged, i.e., larceny from the K Mart in Ft. Smith, or a conspiracy to commit that crime. Except for the notebook itself, there is absolutely no allegation or evidence of a conspiracy among the parties to engage in shoplifting over a wide area for a long period of time. We have said that there must first be prima facie evidence of the existence of a conspiracy before acts and declarations of the conspirators during the course thereof are admissible in evidence against their coconspirator. *Cantrell* v. *State*, 117 Ark. 233, 174 S.W. 521. See also, *Burns* v. *State*, 155 Ark. 1, 243 S.W. 963; *Rowland* v. *State*, 45 Ark. 132; *Casey* v. *State*, 37 Ark. 67 (overruled on another point, *Polk* v. *State*, 45 Ark. 165); Underhill's Criminal Evidence § 865 (Fifth Edition, 1957); Wharton's Criminal Evidence § 440 (Twelfth Edition, 1955). Another foundation stone missing is evidence that the entries in the notebook were made during the

existence of the only conspiracy of which there is in-dependent evidence. See *Lesieurs* v. *State,* 170 Ark. 560, 280 S.W. 9; Wharton, § 426; Underhill, § 862.

It has been suggested that we should hold the note-book admissible as an instrumentality of the crime, that is, as if it were a guidebook of likely or unlikely shop-lifting victims. Of course, this is not the theory on which the notebook was offered or received in evidence, and the admonitions and instructions given the jury relating to the circumstances under, and purposes for, which it might be considered would be inconsistent with that theory. Cases which seem to indicate that record books, notebooks and other writings may be admissible as an instrumentality of the crime may be distinguished readily, usually upon the ground that the writings clearly show a connection with the crime charged or clear indication of a defendant's authorship. See, e.g., *United States* v. *Cole,* 365 F. 2d 57 (7th Cir. 1966), cert. denied, 385 U.S. 1027, 87 S. Ct. 741, 17 L. Ed. 2d 674, reh. denied, 386 U.S. 951, 17 L. Ed. 2d 879, 87 S. Ct. 971 (1967); *State* v. *Watson,* 386 S.W. 2d 24 (Mo. 1964), dismissed, 381 U.S. 275, 85 S. Ct. 1458, 14 L. Ed. 2d 431 (1965); *Widgeon* v. *Commonwealth,* 142 Va. 658, 128 S.E. 459 (1925); *Com-monwealth* v. *Bassi,* 284 Pa. 81, 130 A. 311 (1925); *Com-monwealth* v. *Pezzi,* 284 Pa. 85, 130 A. 312 (1925). No such connection appears in this notebook.

What we have heretofore said demonstrates that there was no error in denial of Headley's motion for a directed verdict. However, because of error in admitting the notebook in evidence, we must reverse the judgment.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. The record here shows that, at the time the notebook was introduced, (1) the three women and two men were traveling together; (2) they had spent the previous night in Oklahoma City; (3) the parties had no relatives in Oklahoma City; (4) the officers had been told that the parties were just on a tour; and (5) that some or all of the parties were then engaged in a larceny.

When the above evidence is considered along with the fact that the parties had Alabama license tags on their vehicles, and stated that the women may have already left for Alabama, there is evidence from which one could conclude that some or all of the parties made the entries in the notebook. After all the notebook was found in a car driven by Caton, owned by Headley and in which the defendants admittedly had been touring, as distinguished from a vacation, for some time. Added to the above facts is the further fact that Caton's initials appear alongside the notations.

We have upheld instructions to the effect that a fact in dispute can be established by circumstantial evidence when its existence can reasonably be inferred from other facts proved in the case but that to do so the facts and circumstances must be consistent with each other and with the guilt of the defendant and inconsistent with any other reasonable theory. The facts and circumstances surrounding the possession of the notebook by the defendants lead only to the reasonable inference that the notebook was kept and the entries were made by one or more of the parties involved in the tour at the time of the theft from the K-Mart Shopping Center. To suppose that some one other than the parties involved in the K-Mart theft made the notebook is to me nothing more nor less than indulging in "imaginary doubts." Other courts, *State* v. *Hightower*, 221 S.C. 91, 69 S.E. 2d 363 (1952), have permitted authentication of writings by circumstantial evidence. Since authentication is only an issue of fact, I cannot understand why the evidence here is not sufficient.

For the reasons stated, I respectfully dissent.